VECC, INC. d/b/a Virgilio's Bistro and Virgilio Del Mare, Plaintiffs,

v.

BANK OF NOVA SCOTIA, Defendant.

No. CIV.2000–030 M/B.

District Court, Virgin Islands, D.St. Thomas.

April 17, 2002.

Lee J. Rohn, St. Croix, VI, for the plaintiff.

Matthew Duensing, St. Thomas, VI, for the defendants.

## MEMORANDUM

MOORE, District Judge.

This matter is before the court on defendant Bank of Nova Scotia's ["the Bank" or "defendant"] objection to the magistrate's order denying the Bank's motion to disqualify plaintiffs' counsel, Attorney Lee J. Rohn of the Law Offices of Lee J. Rohn in St. Croix ["Law Offices"]. The Bank moved to disqualify plaintiff's counsel on the grounds that Attorney Mary Faith Carpenter, who is currently employed by the Law Offices, had previously been a partner in the law firm that handles general legal work for the Bank and had received confidential information from the Bank. Magistrate Judge Geoffrey W. Bar-

nard denied the motion, concluding that Attorney Carpenter should not be disqualified and that, as a result, imputed disqualification could not be applied to the Law Offices. For the reasons stated below, I will affirm the Magistrate Judge's decision denying the Bank's motion to disqualify plaintiffs' counsel.

## I. Background

The plaintiffs commenced this diversity action against the Bank on March 13, 2000, alleging that the Bank breached certain business agreements between the parties when it denied the plaintiffs' application for credit facilities. The plaintiffs also alleged a breach of fiduciary duty, slander, defamation, and slander *per se.*

The plaintiffs are represented by Attorney Lee J. Rohn of the Law Offices. Attorney Mary Faith Carpenter, who is also currently employed by the Law Offices, was previously a partner at Dudley, Clark, and Chan ["Dudley"]. While at Dudley, Attorney Carpenter handled two litigation matters for the Bank unrelated to the instant case, and the plaintiffs concede that at some time, Attorney Carpenter received confidential information from the Bank. The Bank contends that because "it is undisputed that Attorney Carpenter did receive confidential information from [the Bank]," she would be disqualified if she

were handling this case, and as a result, Attorney Rohn and the Law Offices must also be disqualified by imputation.

## II. Discussion

### A. Standard of Review

■ A motion to disqualify counsel is a non-dispositive matter that is reviewed under a "clearly erroneous or contrary to law" standard. *See Brice v. Hess Oil V.I. Corp.,* 769 F.Supp. 193, 194 (D.Vi.1990); FED. R. CIV. P. 72(a); LRCi 72.1.

### B. Analytical Framework

In the Virgin Islands, the Model Rules of Professional Conduct govern the professional responsibilities of practicing attorneys. *See* LRCi 83.2(a); *see also Brice v. HOVIC,* 769 F.Supp. at 194. The defendant's motion for the imputed disqualification of the Law Offices is premised on the disqualification of Attorney Carpenter, thus the Court must first determine whether Attorney Carpenter would be disqualified under Model Rule 1.9(b) from representing the plaintiffs in this matter.[1] *See* MODEL R. PROF'L CONDUCT R. 1.9(b) [hereinafter "Model R."]. If the Court finds that Attorney Carpenter should be disqualified, then the Court turns to Rule 1.10(a) to determine whether the Law Offices must also be disqualified.[2]

Paragraph (b) of Rule 1.9 provides:

---

1. Although Attorney Carpenter did in fact handle two cases for the Bank while at Dudley, the Bank does not move to disqualify Attorney Carpenter under Rule 1.9(a), which governs the disqualification of an attorney who has herself represented an adverse party. The Bank proceeds instead under Rule 1.9(b), which governs the disqualification of an attorney based on her former firm's representation of a client.

2. Rule 1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or

2.2." Model R. 1.10(a); *see also* Model R. 1.9(b) comment ("Legal Background") ("If the new lawyer was sufficiently involved with a prior client to have learned the client's confidences, the new lawyer is individually barred from subsequent adverse representation under Rule 1.9(b), and all lawyers in the new firm are barred under Rule 1.10(a)."). Although the plaintiffs refer to paragraph (b) of Rule 1.10 as the governing provision for imputed disqualification of the Law Offices, paragraph (b) only applies to the migrating attorney's *former* firm. *See* Model R. 1.10(b) ("When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with

A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client consents after consultation.

Model R. 1.9(b).[3] In this jurisdiction, "disqualification is never automatic". *Brice v. HOVIC*, 769 F.Supp. at 195 (internal quotation omitted). " 'The district court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule.' " *Id.* (quoting *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980)). To make this determination, the Court employs a balancing test:

The interest of a client in the continued loyalty of his attorney must be balanced against the opposing litigant's interest in retaining his chosen counsel who has familiarity with the factual and legal issues involved, the opposing litigant's interest in avoiding the time and expense

required to familiarize a new attorney with the matter, and the policy that attorneys be free to practice without excessive restrictions.

*Id.*

## C. Analysis

It cannot be questioned that the plaintiffs' interests in this case are materially adverse to the Bank. Thus, the threshold question before Judge Barnard, and now before me, is whether Attorney Carpenter would be disqualified from representing the plaintiffs in this matter under Rule 1.9(b) because (1) this case is the same or a substantially related matter in which Dudley had previously represented the Bank, and (2) Attorney Carpenter had acquired confidential information about the Bank that is material to this case.

 In determining the existence of a "substantial relationship" between Dudley's representation of the Bank during Attorney Carpenter's time there and this case, I am to consider (1) the nature and scope of the earlier representation; (2) the nature of the present lawsuit; and (3) the possibility that the client might have disclosed confidences during the earlier representation which could be relevant and detrimental to the present action. *Blue-*

---

interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless . . . ."). Paragraph (a) applies to an attorney's *current* firm regardless of when she migrated there. Under paragraph (a), then, no attorney associated with the Law Offices can knowingly represent the plaintiffs in this case if Attorney Carpenter could not ethically do so herself.

**3.** Rule 1.6 provides, in relevant part:
A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation . . . .

Model R. 1.6. Rule 1.9(c) provides:
A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 ["Candor to the Tribunal"] would permit or require with respect to a client, or when the information has become generally known; or
(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

Model R. 1.9(c).

*beard's Castle Inc. v. Delmar Mktg. Inc.*, 886 F.Supp. 1204, 1209 (D.Vi.1995) [*"Blue-beard's I"*] (setting forth the "substantial relationship test" in a case concerning the disqualification of an attorney under Rule 1.9(a)). As stated, the test for determining a substantial relationship carries with it certain presumptions regarding the possibility of disclosure of confidential information that could be relevant and detrimental to this case. Thus, a court need not delve into the exact nature of confidences revealed if it is merely possible, given the nature and scope of the current and former representation, that such confidences were revealed. *See id.* at 1209–10.

■ The record reflects that while Attorney Carpenter was a partner at Dudley, Dudley acted as general corporate counsel for the Bank. The Bank regularly communicated to other partners at Dudley its procedures, personnel, philosophy, internal operations, and information regarding ongoing litigation. Thus, the nature and scope of Dudley's representation of the Bank during Carpenter's tenure there was quite broad, covering all aspects of ordinary corporate representation and presenting not only the possibility of disclosure to the firm of confidences relevant and detrimental to the Bank in this matter, but the extreme likelihood of such disclosure. Under Rule 1.9(b), such comprehensive representation is sufficient to establish a substantial relationship between Dudley's representation of the Bank and any former partner's representation of the plaintiffs against the Bank, regardless of whether the former partner herself was the recipient of this information while at Dudley.

4. The Bank asserts that, once the Court finds a substantial relationship between the former and current representation, the Court need not determine whether material confidences were actually conveyed. In support, the Bank relies on *Bluebeard's I*, 886 F.Supp. at 1209–10. Because *Bluebeard's I* involved the

This finding does not end the inquiry, however. Unlike paragraph (a) of Rule 1.9, for which a finding of a substantial relationship and its concomitant presumed confidences leads directly to the second step of balancing the interests of the parties under *Brice*, paragraph (b) requires more. Paragraph (b)(2) specifically requires a finding that the attorney actually "acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter." Model R. 1.9(b)(2). As explained in the comment to the rule,

> [p]aragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(b). Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict.

*Id.* comment para. [8]. Under this paragraph, the burden of proof rests on the challenged firm. *See id.* comment para. [7].[4]

■ The question thus becomes whether Attorney Carpenter acquired confidential information about the Bank that is material to this case. In its objection, the Bank repeatedly points out that the plaintiffs admit that Attorney Carpenter "received confidential information from" the Bank. Contrary to the Bank's suggestion, however, this admission does not mandate the disqualification of Attorney Carpen-

application of paragraph (a) of Rule 1.9, it does not support the Bank's motion for disqualification here. Although paragraph (a) does indeed carry a presumption of conveyed confidences, paragraph (b), which guides me here, sets forth additional elements which I must consider.

ter;[5] the confidences revealed must also be "material to the matter." *Id.* 1.9(b). After considering the submissions of the parties and holding an evidentiary hearing, Judge Barnard concluded that there was no evidence that Attorney Carpenter possessed any actual knowledge or shared confidences relating in any way to this case, and I cannot find his factual finding to be clearly erroneous. As a result, I will affirm Judge Barnard's ruling that Attorney Carpenter need not be disqualified, and conclude accordingly that there can be no imputed disqualification of the Law Offices or Attorney Rohn.

Even assuming, *arguendo*, that Attorney Carpenter had indeed received confidences that are material to this matter and is herself disqualified from representing the plaintiffs, imputed disqualification of the Law Offices is not automatic. As already stated, the Court has a certain amount of discretion in this regard and " 'should disqualify . . . only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule.' " *Brice v. HOVIC,* 769 F.Supp. at 194 (quoting *U.S. v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980)). The record establishes that before Attorney Carpenter

began working at the Law Offices, Attorney Rohn instituted a firm-wide screening mechanism designed to isolate Attorney Carpenter from any cases in which she could have a potential conflict. Attorney Carpenter states in her affidavit that she has been in fact isolated from all cases in which she may have a potential conflict. (*See* Opp'n, Ex. 1 to Ex. 4, ¶¶ 12–13.) She further avers that she has not conveyed, nor will she ever convey, any confidential information about the Bank to any member of the Law Offices, any client of the Law Offices, or any other inappropriate person or entity. (*See id.* ¶¶ 14–16.) The evidence further establishes that Attorney Carpenter has not worked on any aspect of this case, except to affix her signature to a certificate of service for a response to a dispositive motion. Despite having signed this document, and technically breaching the Law Office's screening mechanism, Attorney Carpenter testified that she did not review any of the substantive documents associated with the motion, nor did she have access to the respective files.[6]

In light of this evidence, the Magistrate Judge found that Attorney Carpenter's complete lack of meaningful involvement in this case, her attenuated contact with Bank litigation while at Dudley, and her

---

**5.** I note that the Bank takes this admission further, asserting that the plaintiffs "seem to concede Carpenter's disqualification" because they "do not even argue against it." (*See* Mem. Supp. Objection at 6 ("[T]he existence of a substantial relationship as to Attorney Carpenter was never an issue in this case . . . .").) Although the basis for this purported concession is less than clear, it must be assumed that it would be grounded in the specific elements of Rule 1.9(b), under which all parties (and Judge Barnard) proceed here. I find the contention that the disqualification of Attorney Carpenter was not "argued" by the plaintiffs to be without foundation and, indeed, bizarre.

**6.** In support of imputed disqualification, the Bank cites *McKenzie Constr. v. St. Croix Stor-*

*age Corp.,* 961 F.Supp. 857 (D.Vi.1997), a case whose facts are eminently distinguishable from the facts of this case. In *McKenzie,* the Court disqualified an attorney who had served as a mediator in the very same case before being hired by the challenged law firm. Although an ethics screen had been erected to isolate the conflicted attorney from involvement in the case, there was evidence that the attorney had thereafter met with an investigator in the case. In contrast, the potentially conflicted attorney in this case has never had any contact with any substantive aspect of it, nor has there been a breach of the screening process of anywhere near the same magnitude. *McKenzie* therefore does not mandate a different result.

continued isolation from litigation against the Bank all tip the balance against her individual disqualification. I similarly conclude that, even if Attorney Carpenter were to be disqualified from representing the plaintiffs in this case, imputed disqualification of the Law Offices would not be warranted.

## ORDER

For the reasons stated in the accompanying Memorandum of even date, Magistrate Judge Geoffrey W. Barnard's order of October 30, 2001 denying the defendant's motion to disqualify plaintiff's counsel is hereby **AFFIRMED**.