EZEKIEL and BERNADINE FARRELL, ARNOLD and ELIZABETH ANTHONY, FELIPE and MARIA E. RIOS, SCIPIO and SHIRLEY MURREN, Plaintiffs

v.

HESS OIL VIRGIN ISLANDS (HOVIC); HOVENSA LLC., AMERADA HESS CORP., LITWIN — PAN AMERICAN CORP., FLUOR ENTERPRISES INC., RIGGERS AND ERECTORS INTERNATIONAL INC., RARITAN SUPPLY COMPANY, Individually and as successor in interest to BRIDGE SUPPLY COMPANY, VIRGIN ISLANDS INDUSTRIAL MAINTENANCE CORP., 3M aka MINNESOTA MINING AND MANUFACTURING COMPANY, A.W. CHESTERTON COMPANY, CERTAINTEED PRODUCTS CORP., CRANE CO., DURABLA MANUFACTURING COMPANY, FOSTER WHEELER CORP., JCI AND LITWIN SEALING TECHNOLOGIES, LLC f/k/a JCI AND LITWIN INC., GENERAL ELECTRIC CORP., INGERSOLL RAND CORP., JOHN CRANE COMPANY, UNION CARBIDE CORP., YARWAY CORP., and JOHN DOE DEFENDANTS, Defendants

Case No. SX-04-CV-607

Superior Court of the Virgin Islands

Division of St. Croix

August 6, 2012

50

DONOHUE, *Presiding Judge*

## MEMORANDUM OPINION

(August 6, 2012)

**THIS MATTER** is before the Court on two motions filed by Defendants, Hovic and Hess Corporation; 1) Motion to Disqualify Plaintiffs' Counsel, Attorney Theodore Huge, Esq., and the Law Firm of Motley Rice. LLC; and 2) Motion to Disqualify Plaintiffs' Counsel. Attorney Theodore Huge, Esq., Attorney Russell Pate Esq., and their

54

respective law firms Harris & Huge LLC and the Pate Law Firm.[1] For the reasons stated below, the Court will deny both motions.

## I. PROCEDURAL HISTORY

■ This matter sounds in negligence.[2] In 2004, the law firm of Motley Rice LLC[3] ("Motley Rice") took on representation of the Plaintiffs in this matter. Attorney Theodore Huge Esq., ("Huge") while an associate at the law firm of Motley Rice, contacted Attorney Lee J. Rohn ("Rohn") and the law firm of Rohn & Associates to act as local counsel in this matter.[4] Rohn agreed and subsequently filed the Complaint on October 29, 2004.[5] Co-Defendant, Hess[6] filed an Answer to the Complaint on January 19, 2005.[7] On March 22, 2005 Huge also filed a Notice of Appearance on behalf of Plaintiffs.[8] Subsequently, Hess filed a motion to disqualify Rohn

---

[1] (Hovic and Hess Corp's Mot. Disqualify Huge and Motley Rice LLC, filed Sept. 6, 2006) (Hovic and Hess Corp.'s Mot. Disqualify Pl.'s Counsel, filed July 21, 2011.)

[2] Plaintiffs allege that the negligence of Hess/Hovic Oil Refinery and several other Defendants contributed to the Plaintiffs' injuries. Plaintiff Arnold Anthony alleges that he was exposed to asbestos while working at the HOVIC oil refinery from 1966-1999. His wife, Elizabeth Anthony alleges a loss of consortium. Plaintiff Ezekiel Farrell alleges that he was exposed to asbestos while working at the oil refinery from 1983 until 1985. His wife, Bernadine Farrell claims a loss of consortium. Plaintiff Felipe Rios alleges that he was exposed to asbestos while working at the oil refinery from 1976 until at least 2004. His wife, Marie E. Rios alleges a loss of consortium. Finally, Plaintiff Scipio Murren Sr., alleges that he was exposed to asbestos while working at the refinery from 1966-1999. His wife, Shirley Murren alleges a loss of consortium. (Comp., filed Oct. 29, 2004); (Amend. Compl. filed April 8, 2005.)

[3] Motley Rice is one of America's largest Plaintiff's law firms in the country; it is headquartered in South Carolina; and has branch offices in several states. Motley Rice "Firm Profile" (2012), http://www.motleyrice.com/info/firm-profile profile.

[4] (Huge Opp. Mot. Disqualify. Aff. filed Sept. 29, 2006.)

[5] (Comp., filed Oct. 29, 2004) (Amend. Compl., filed April 8, 2005.)

[6] Defendant Hess has changed company names since the commencement of this matter. In 1968. Hess Oil and Chemical Corporation merged with Amerada Petroleum Corporation into Amerada Hess Corporation. Before the merger, Hess Oil and Chemical developed the Hess Oil Virgin Islands Corporation (HOVIC). Since 2006, the merged company has been called Hess Corporation. HOVIC operated under the name HOVENSA a joint venture with Petróleos de Venezuela until April 2012.

[7] (Def. Hovensa, Ans., filed Jan. 19, 2005.)

[8] (Not. Appearance Huge, filed Mar. 22, 2005.)

from representing Plaintiffs in this matter.[9] This Court found that under the law[10] given the factual history of this matter and Rohn's prior representation of Hess in toxic tort litigation cases she was disqualified from representing Plaintiffs in this matter.[11] Prior to the issuance of the order disqualifying Rohn, Hess filed a motion to disqualify Huge and the firm of Motley Rice. While this motion was still pending, Huge left Motley Rice and started his own law firm, Harris & Huge. Motley Rice withdrew as counsel for Plaintiffs.[12] Plaintiffs retained Huge after he left Motley Rice. Huge refiled a Notice of Appearance on behalf of Harris & Huge on August 16, 2010.[13] Later, Huge contacted Attorney J. Russell Pate ("Pate") in 2011 and asked if Pate on behalf of his law firm, the Pate Law Firm, would also act as local counsel in this matter. Pate agreed and filed a Notice of Appearance on March 30, 2011.[14] Subsequently, on June 21, 2011 Hess filed a motion to disqualify Pate and the Pate Law Firm and Huge and the firm of Harris & Huge.[15] Shortly afterward. Pate filed a Notice of Deposition of Plaintiff Arnold Anthony.[16] In reaction, Hess filed a motion for emergency protective order, requesting that the Court prevent any depositions in light of the motion to disqualify Plaintiffs' counsel before the Court.[17] The Court granted the order on Nov. 29, 2011.[18] Both Huge and Pate opposed disqualification,[19] Subsequently, on

---

[9] The Court notes that while the motion to disqualify Rohn was pending in this matter, she was disqualified from representing plaintiffs in similar asbestos related lawsuits against Hess. *Theodule v. Hess*, Civ. No. 604/2004 (Super. Ct. 2005); (Order disqualifying Atty. Rohn, dated Oct. 31, 2005) (Order Denying Rohn's Mot. Reconsider Disqualification, dated July 5, 2007) (Super Ct. 2007); *Estate of Joseph Henry v. Hess Civ.* No. 609/2004 (Super. Ct. 2005) (Order disqualifying Attorney Rohn, signed Oct. 26, 2005.)

[10] MODEL RULES OF PROF.'L CONDUCT R. 1.9. "Client — Lawyer Relationships: Duties To Former Clients" (2007).

[11] (Order, entered May 25, 2012.)

[12] (Atty. Ward, Mot. Withdraw Pl.'s Counsel. Arnold and Elizabeth Anthony, filed April 12, 2012.) (Atty. Ward, Mot. Withdraw Plaintiff's Counsel, Ezekiel and Bernadine Farrell, filed Feb. 04, 2011) (Atty. Ward, Mot. Withdraw Plaintiff's Counsel. Felipe and Marie Rios, filed Feb. 4, 2011.)

[13] *Id.*

[14] (Pate, Not. Appearance on Behalf of Arnold and Elizabeth Anthony, filed Mar. 3, 2011.)

[15] (Hovic. Mot. Disqualify Pl.s' Counsel. Huge and Pate, filed June 21, 2011.)

[16] (Pl.'s Not. Depo. Arnold Anthony, filed Nov. 9, 2011.)

[17] (Hess' Emergency Mot. Protective Order, filed Nov. 14, 2011.)

[18] (Order, granting Hess' Emergency Mot. Protective Order, entered Nov. 29, 2011.)

May 31, 2012 the Court held an evidentiary hearing on the instant motions.[20]

## II. STANDARD

██ The Court is tasked with supervising the conduct of attorneys that appear before it; and has inherent power to disqualify any attorney if it finds such action is warranted.[21] It is at the Court's discretion to determine whether disqualification is warranted.[22] Although "doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a heavy burden and must meet a high standard of proof before a lawyer is disqualified."[23] Hess contends that Rohn's disqualification must be imputed to Huge and Pate and their respective law firms. The imputation of conflicts of interest to affiliated lawyers guards against the reality that where a lawyer's relationship with a client "creates an incentive to violate an obligation to another client" an affiliated attorney may have a similar incentive.[24] Further, lawyers who qualify as affiliated or associated might have access to confidential files or information.[25] This is why the imputation of a conflict of interest is an essential tool in reducing the compromising of confidential client information amongst affiliated lawyers.[26] However, policy considerations, including the right of the client to choose an attorney and

---

[19] (Huge, Opp. Mot. Disqualify, filed Sept. 29, 2006) (Pate Opp., filed July 1, 2011.)

[20] (Order Scheduling Evidentiary Hearing, entered on Mar. 16, 2012). Where material facts, necessary to determine disqualification, are in dispute, a trial court will generally conduct an evidentiary hearing on the matter. *Bluebeard Castle v. Del Mar Marketing, Inc.*, 886 F. Supp. 1204, 1210 (D.V.I. 1995); *see also Guerrero v. Bluebeard Castle* 982 F. Supp. 343, 37 V.I. 344 (1997).

[21] *McKenzie Construction v. St. Croix Storage Corp.*, 961 F. Supp. 857, 859, 37 V.I. 105 (D.V.I. 1997).

[22] ANNOT. MODEL R. PROF.'L CONDUCT "Preamble and Scope: Disqualification" annot. at 9 (6th ed. 2007) (quoting *Trimper v. Terminix Int'l Co.*, 82 F. Supp. 2d 1 (N.D.N.Y. 2000) (citations omitted) (2007)).

[23] *Prosser v. National Rural Utility Cooperative Financial Corp.*, 2009 U.S. Dist. LEXIS 47744, *6 (D.V.I. 2009) (citations and quotations omitted).

[24] RESTATEMENTS (THIRD) OF LAW GOVERNING LAWYERS: "Imputation of a Conflict of Interest to an Affiliated Lawyer" § 123 cmt. b (April 2012).

[25] *Id.*

[26] *Id.*

the ability of attorneys to move between firms cautions courts against extending imputation further than necessary.[27]

■■ The Court of Appeals for the Third Circuit has laid out several factors a court must review in deciding a motion to disqualify counsel; 1) the former client's interest in attorney loyalty; 2) the current client's interest in retaining [chosen counsel]; 3) the risk of prejudice to the current client; and 4) the court's interest in protecting the integrity of the proceedings and maintaining public confidence in the judicial system.[28] A court " 'should disqualify . . . only when it determines on facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule' "[29] In the Virgin Islands, the conduct of attorneys is guided by the American Bar Association Model Rules of Professional Conduct ["MRPC"].[30]

## III. DISCUSSION

### A. Huge and the Law Firm of Harris & Huge

As stated earlier. Motley Rice initially represented Plaintiffs. While an associate at Motley Rice, Huge contacted Rohn and asked her to act as local counsel in this matter. Subsequently, Huge left Motley Rice and started the law firm of Harris & Huge. Plaintiffs retained Huge as their attorney. Hess first motioned to impute disqualification on the law firm of Motley Rice and Huge. As Motley Rice has withdrawn from representation of Plaintiffs, disqualification of Motley Rice is moot.[31] After Huge left Motley Rice and started his own law firm, Hess' filed a new motion to disqualify Huge, which urges the Court to impute Rohn's disqualification on to Huge and the law firm of Harris & Huge. The imputation rules apply when deciding whether to disqualify an associated

---

[27] *Id.*

[28] *Illaraza v. Hovensa, L.L.C., Civ.* No. 2008-0059, 2012 U.S. Dist. LEXIS 45358, at *16 (D.V.I. 2012) (quoting *Int'l Longshoremen's Ass'n. Local Union 1332 v. Int'l Longshoremen's Ass'n,* 909 F.Supp. 287, 293 (E.D. Pa. 1995)).

[29] *VECC Inc. v. Bank of Nova Scotia. Civ.* No. 2000-030, 222 F. Supp. 2d 717 (D.V.I. 2002) (citing *Brice v. Hovic,* 769 F. Supp. 193, 194 (D.V.I. 1990) (quotations omitted)).

[30] *See* 4 V.I.C. § 32(f) (Supp. 2012); V.I.S. CT. R. 203(a); *See also Rainey v. Hermon,* 55 V.I. 875 (2011) (Model Rules of Professional Conduct adopted by Supreme Court of the Virgin Islands are also adopted by the Superior Court).

[31] (Atty. Ward, Renewed Mot. Withdraw Plaintiffs Counsel, filed April 12, 2012.)

attorney.[32] Thus, Rule 1.10(a) guides the Court in this matter. MRPC 1.10(a) states in pertinent part,

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9 . . .[33]

■ "Whether a lawyer's disqualification will be imputed to other lawyers with whom she works depends first of all upon why she was disqualified."[34] Only if MRPC 1.7 or 1.9 compels disqualification, will it be imputed under 1.10.[35] Typically, courts confronted with similar allegations first determine whether the attorney formerly associated with the adverse party is disqualified under 1.9[36] which governs the disqualification of an attorney based on her former firm's representation of a client.[37] In this matter, Rohn has already been disqualified under 1.9(a).[38] The Court will now determine whether Rohn's disqualification is imputed upon Motley Rice and then to Huge and then to the law firm of

---

[32] REST. 3D GOVL § 123. Rprter's Note, cmt. a, "Scope and Cross References" (Supp. April 2012)

[33] ANNOT, MODEL R. PROF.'L CONDUCT 1.10(a) "Imputation of Conflict of Interest" 6th ed. 2007).

[34] ANNOT. MODEL R. PROF.'L CONDUCT "Imputed Disqualification: General Principles" annot. at 173 (6th ed. 2007).

[35] (*Id.*)

[36] MODEL RULE PROF.'L. CONDUCT I-1.9(b) "Duties To Former Clients" states, "[a] lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client." (2000).

[37] *VECC Inc. v. Bank of Nova Scotia,* 222 F. Supp. 2d at 721; *see generally Martin v. AlantiCare,* Civ. No. 10-6793, 2011 U.S. Dist. LEXIS 122987 (D.N.J. 2011) (New Jersey adopted the ABA MRPC in 1984.) MODEL RULE PROF.'L CONDUCT "State Adoption of the Model Rules of Professional Conduct" (2012). New Jersey Model Rules of Professional Conduct Rule 1.10 is substantially similar to MRPC 1.10 with the exception of provision 10(c). MODEL RULE PROF.'L CONDUCT "COMPARISON OF NEWLY ADOPTED NEW JERSEY RULES OF PROFESSIONAL CONDUCT TO THE ABA'S MODEL RULES OF PROFESSIONAL CONDUCT" (2006).

[38] *Theodule v. Hess,* Civ. No. 604/2004 (Super. Ct. 2005) (Order disqualifying Rohn, signed Oct. 31, 2005) (Order Denying Rohn's Mot. Reconsider Disqualification, signed on July 5, 2007); *Estate of Joseph Henry v. Hess* Civ. No. 609/2004 (Super. Ct. 2005) (Order disqualifying Rohn, signed Oct. 26, 2005.)

Harris & Huge under 1.10 .[39] Hess contends that imputation is proper in this matter

> Because Rohn associated with the firm of Harris & Huge and the Pate Law Firm to represent the Plaintiffs substantially similarly related asbestos cases, the imputation principles of Rule 1.10 should apply to disqualify Harris & Huge and the Pate Law Firm.[40]

Essentially, it is the co-counsel relationship that existed between Rohn and Huge that Hess urges must compel the Court to view Huge's firm Harris & Huge and Rohn & Associates as a single or associated firm. Attorney Huge concedes that while at the Firm of Motley Rice, he contacted Attorney Rohn in 2004 and requested that she participate as co-counsel in this matter.[41] But Huge asserts in his affidavit that as primary and national counsel in this matter he made all decision regarding trial tactics and strategy.[42] And he maintains that Rohn was retained for the limited purposes of facilitating communication with the clients on St. Croix and her "knowledge of Virgin Islands procedural and substantive law, and her trial litigation expertise."[43] Huge also averred that Rohn never shared with him any information regarding "confidences of the Defendant [Hess],"[44] As such, Huge argues that he and Rohn are not associated for purposes of 1.10(a).[45]

Hess vigorously disagrees; arguing that Huge and Rohn's actions in this matter rise to the level of "associated firms" for the purposes of imputed disqualification under 1.10. Hess acknowledges that technically Harris & Huge and Rohn & Assoc., are separate firms but argues that certain practice settings and associations between lawyers can lead to a determination that the firms are associating and acting as one firm. For support, Hess points to MRPC 1.0 (c) which defines a firm as ". . . a

---

[39] ANNOT. MODEL R. PROF'L CONDUCT 1.10 "Associated In a Firm" annot. at 173 (6th ed. 2007).

[40] (Hovic, Mot. Disqualify Pl.'s Counsel, Huge and Pate ¶ 4.)

[41] (Huge, Opp. Mot. Disqualify ¶4.)

[42] (*Id.* at Ex. 2.)

[43] (*Id.*)

[44] (*Id.*)

[45] In Huge's opposition to the motion to disqualify him, he argues that Rohn was improperly disqualified in similar toxic tort and asbestos cases similar to this matter. This argument can be disposed of quickly, the Court's determination on Rohn stands as proper.

60

lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or *other association authorized to practice law . . .*"[46] Hess argues that even if not formally one firm, the working relationship that Harris & Huge and Rohn & Assoc., had can be construed as an "other" association authorized to practice law. Hess seeks to bolster its argument by pointing to *Skokie Gold Standard Liquors v. Joseph E. Seagram & Sorts Inc,*[47] a case cited in the 2003 Annotated Model Rules of Professional Conduct annotation to Rule 1.10.[48] *Skokie* is cited to as an example of the expanded definition of the word "firm" under the 2002 amendments to the MRPC.[49] *Skokie* stands for the proposition that for the purposes of preserving client confidences, there is a presumption of shared confidence between attorneys in a firm and the exact relationship: between the attorneys, whether employee-employee or partnership is, immaterial, so long as the attorneys were associated somehow in the practice of law.[50]

But the ruling in *Skokie* is not applicable to the determination of Huge's disqualification. The Court of Appeals for the Third Circuit has emphatically rejected per se disqualification in *co-counsel arrangements.*[51] Instead, the Third Circuit cautions that attorney disqualification in these matters should be decided only after careful analysis of the facts and circumstances of each case.[52] And the MRPC no longer suggests that courts, none withstanding applicable state law, apply per se disqualification in Rule 1.10 motions[53] *Skokie* was stricken from

---

[46] ANNOT. MODEL RULE PROF.'L CONDUCT 1.0(c) "Terminology" 13 (2003) (*emphasis added*).

[47] *Skokie Gold Standard Liquors v. Joseph E. Seagram & Sons Inc.*, 116 Ill. App. 3d 1043, 452 N.E. 2d 804, 72 Ill. Dec. 551 (Ill. 1983).

[48] ANNOT. MODEL RULES OF PROF.'L CONDUCT RULE 1.0 "Definition of 'Firm' " annot. at 188 (2003).

[49] *Id.*

[50] *Id.*

[51] *Akerly v. Red Barn System, Inc.*, 551 F. 2d 539, 545 (1977) (disqualification of principal plaintiffs attorney did not merit per se disqualification of local counsel hired by plaintiffs attorney).

[52] *Id.*

[53] In 2007, the Annotated MRPC was significantly revised to take into account all previous Amendments to the MRPC and the American Law Institutes' Restatement (Third) of the Law Governing Lawyers. ANNOT. MODEL R. PROF.'L CONDUCT "Acknowledgments", iii (2007).

the annotations.[54] Instead of the rigid application of the presumption of shared confidences in all attorney relationships, the 2007 MRPC notes that courts should determine whether an associated attorney should be disqualified by imputation only after fact specific review of the working relationship between attorneys.[55] The editors explained that the traditional definition of "firm" as provided by Rule 1.0 does not fit the broad array of relationships to which Rule 1.10 has been applied.[56] Instead courts are cautioned to review various working arrangements that may arise between attorneys and then analyzed the expectations of confidentiality and loyalty that arise from these relationships.[57] As noted in the annotations to Rule 1.10, whether two or more lawyers constitute a law firm depends on specific fact.[58] This includes a review of a variety of issues, such as any formal agreements between the two lawyers or whether the attorneys might have mutual access to information concerning the clients they serve.[59]

⬛ Hess insists that even without the presumption that Rohn and Huge shared confidential information, the facts giving rise to the co-counsel arrangement between the two and their respective law firms create an association for the purposes of Rule 1.10(a). Specifically, Hess contends "[a]s co-counsel for Plaintiffs in those matters, it should be presumed that Rohn shared the Plaintiffs files, related documents, and confidential information with Attorneys Huge and Pate prior to this litigation."[60] For support of this theory, Hess points to Section 123 of the RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS, which applies to the imputation of a conflict of interest to associated lawyers.[61] Section

---

[54] *Compare* 2003 ANNOT. MODEL R. PROF.'L CONDUCT RULE 1.10 "Imputed Disqualification: General Principles, Definition of 'Firm' ", annot. at 188 (2003) & 2007 ANNOT. MODEL R. P. CONDUCT RULE 1.10 "Imputed Disqualification: Associated in a Firm" annot. at 173-174 (2007)

[55] 2007 ANNOT. MODEL R. PROF.'L CONDUCT RULE 1.10 "Imputed Disqualification: Associated in a Firm" annot. at 173-174 (2007).

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] (*Id.* at 5.)

[61] REST. 3D LAW GOV. LAWYERS § 123 "Imputation of a Conflict of Interest to an Affiliated Lawyer" (2000).

123, comment c (*iii*) states in pertinent part that associated lawyers or law firms can include ". . . [t]wo or more lawyers or law firms [who] might associate for purposes of handling a particular case. *A common example is a lawyer who appears as local counsel in litigation principally handled by another firm.*"[62] As Rohn and Huge were co-counsel in this matter, Hess argues that the Restatement guides the Court in determining that Huge must be disqualified in this matter. The Court disagrees. Section 123 does not stand for the proposition that all co-counsel relationships should be deemed as associated for the purposes of Rule 1.10(a). Comment c of Section 123 goes on to state

> [e]ach lawyer [in a principal counsel/local counsel arrangement] *must comply with the rules concerning a conflict of interest and other lawyers in their respective firms are governed by the rules of imputation.*[63]

In the Virgin Islands, the MRPC guides attorney conduct. Under the MRPC, "a co-counsel relationship between a conflicted lawyer and other counsel does not automatically mean the conflicts of one are imputed to the other."[64] Rather, there must be more than a small actual risk of confidential client information spreading from the primarily conflicted attorney to the second firm.[65] The presumption of shared confidence found when two firms are associated with each other does not extend to lawyers in a co-counsel relationship.[66] *Instead, a showing of actual disclosure must be found.*[67] And Hess has failed to provide any evidence of actual disclosure of confidential information between Huge and Rohn. An exhaustive review of the record herein reveals that Hess has put no evidence before the Court that proves or even indicates that Huge and Rohn have engaged in actual disclosure of confidential information. The exhibits attached to the instant motion(s) are all orders from various Virgin Islands courts on the disqualification of Rohn

---

[62] *Id.* at cmt. c (iii).

[63] *Id.* (emphasis added).

[64] ANNOT. MODEL RULE PROF.'L CONDUCT 1.10 "Imputed Disqualification: General Principles" annot. at 173-174.

[65] *Id.* "Co-Counsel" annot. at 176 (quoting *Jones v. Beverly Health Services & Rehab Serv.*, 68 F. Supp. 2d 1304 (N.D. Fla. 1999).

[66] *Id.* (quoting Alan H. Casper & Paul R. Taskier "*Vicarious Disqualification of Co-Counsel Because of Taint*" Geo J. Legal Ethics 155 (1987).

[67] *Id.; see also Akerly*, 551 F.2d at 544; (emphasis added).

or associates in her firm as counsel in similar matters.[68] Nothing that substantiates actual disclosure between Rohn and Pate. The bare allegation that "[a]s co-counsel for Plaintiffs in those matters, it should be presumed that Rohn shared the Plaintiffs' files, related documents, and confidential information with Attorneys Huge and Pate prior to this litigation" does not suffice in this instance.[69]

 Some courts have found that when a party moves for disqualification of opposing counsel, the court may decide the motion on the papers presented before it.[70] An evidentiary hearing will be held only to fill in ". . . gaps in the facts . . ." that a court needs to make a determination on the motion to disqualify.[71] This precaution helps limit the risk of inquiring into revealing secrets that an attorney may have received into his or her confidence.[72] Hess provided no evidence of disclosure between Huge and Rohn within the pages of the instant motion.

---

[68] (Hovic. Mot. Disqualify Pl.s' Counsel Huge and Motley Rice LLC., filed Sept. 6, 2006);
 • Ex. A (*Theodule v. Hess*, Mem. Op. Disqualifying Rohn as Pl.'s Counsel, SX-04-CV-604, dated Oct. 31, 2005); and
 • Ex. B (*Estate of Joseph Henry v. Hess*. Mem. Op. Disqualifying Rohn as Pl.'s Counsel, SX-04-CV-609, dated Oct. 26, 2005).
(Hovic, Mot. Disqualify Pl.s' Counsel Huge and Pate, filed July 21, 2011);
 • Ex. A (*Theodule v. Hess*, Mem. Op. Disqualifying Rohn as Pl.'s Counsel, SX-04-CV-604, dated Oct. 31, 2005);
 • Ex. B (*Estate of Joseph Henry v. Hess*, Mem. Op. Disqualifying Rohn as Pl.'s Counsel, SX-04-CV-609, dated Oct. 26, 2005);
 • Ex. C (*Estate of Joseph Henry v. Hess*, Order Denying Rohn's Mot. Reconsideration of Disqualification SX-04-CV-609, dated July 5, 2007);
 • Ex. D (*George v. Hess*, Order Granting Def.'s Mot. Disqualify Anna Washburn Esq., and the Law Firm of Rohn & Cameron, SX-05-CV-221, dated Oct. 31, 2006);
 • Ex. E (*Alexander v. Hess*, Order Granting Def.'s Mot. Disqualify Anna Washburn Esq., and the Law Firm of Rohn and Cameron, SX-04-CV-602, dated Oct. 31, 2006);
 • Ex. F (*Estate of Joseph Henry*, Compl., filed by Rohn on behalf of Plaintiff's against Def. Hess Oil, dated Nov. 1, 2004); and
 • Ex. G.(*Farrell v. Hess*, Compl., filed by Rohn on behalf of Plaintiffs against Def. Hess Oil. April 7, 2005).
[69] (Hovic, Mot. Disqualify Pl.s' Counsel Huge and Pate ¶ 4.)
[70] *Essex Chem., v. Hartford Accident & Indemnity Comp.*, 993 F. Supp. 241, 250 (N.J. Dist. Ct. 1998) citing to (*Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 221, 536 A.2d 243 (1988)).
[71] *Id.*
[72] *Id.*

Hess was given another opportunity to substantiate its claims at the evidentiary hearing held in this matter.[73] Hess did not take advantage of this opportunity. At the hearing, the Court inquired as to why counsel for Hess had entered no evidence into record or proffered a witness for testimony. Counsel claimed that it could not furnish any proof to the Court because it would necessarily include confidential information. This argument does not persuade the Court. In the instant motion, Hess proffered no evidence of actual disclosure. Hess proffered no evidence of actual disclosure at the evidentiary hearing. As a last resort, Hess should have requested that the Court conduct an in camera review of any alleged evidence; this would have served both to substantiate Hess' arguments in favor of disqualification and shielded the confidential information Hess wants to protect.[74] There must be some scintilla of evidence or indication that actual disclosure has taken place between Rohn and Huge for the Court to find that disqualification of Huge and his law firm is proper. Without this requirement,

> [c]arriage of this imputation-on-an-imputation to its logical terminus could lead to extreme results in no way required to maintain public confidence in the law . . . . Such a rule would be unsound logically and indefensible practically. When considerations of wasted time and unnecessary expense are added to the weight against the rule, it becomes clear that so rigid a commandment has no place in the legal realm,[75]

This is why the double imputation theory is heavily criticized by courts.[76] In this matter, Huge worked as an associate at Motley Rice, and then left to start the law firm of Harris & Huge. Imputing Rohn's disqualification on him

---

[73] The Court notes that it is prevailing practice in the Virgin Islands to hold an evidentiary hearing before ruling on attorney disqualification motions. *See Bluebeard Castle v. Del Mar Marketing Inc.*, 886 F.Supp. 1204, 1210 (D.V.I. 1995); *Guerro v. Bluebeard Castle*, 982 F. Supp. 343, 37 V.I. 344 (1997).

[74] *Guerrero v. Bluebeard Castle Hotel*, 982 F. Supp. 343 at 347, 37 V.I. 344 (counsel motioning for disqualification proffered; no substantive evidence before the court, despite the ability to do so in camera); *Hamilton v. Dowson Holding*, 455 Fed. Appx. 228 (3d. Cir.) (non-precedential opinion) (Magistrate reviewed in camera confidential information related to counsel's motion to disqualify).

[75] *Essex Chem. v. Hartford Accident & Indemnity Comp.*, 993 F. Supp. at 247, citing to (*American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir., 1971) (rehearing denied)).

[76] ANNOT. ABA MODEL RULE PROF.'L CONDUCT 1.10 "Imputed Disqualification: Co-Counsel" annot. at 176 (citing Casper and Taskier, 1 Geo, J. Legal Ethics 155.

would essentially amount to a triple imputation theory. The Court will not apply such an attenuated theory, without proof of actual disclosure.

## B. Attorney Russell Pate and the Pate Law Firm

 Hess also motions for the disqualification of Pate and the Pate Law Firm. By affidavit submitted to the Court. Pate stated that Huge asked him to act as local counsel in this matter in March 2011.[77] This created a co-counsel relationship between Huge and Pate. As Rohn was still local counsel on record, it can be assumed that she and Pate and their respective law firms were co-counsel in this matter. In its motion to disqualify Pate. Hess makes no differentiation between Pate and Huge. Both Hess argues, should be disqualified because of their relationship with Rohn. As it did with Huge, Hess provides no evidence to substantiate this claim. As discussed above, the presumption of shared confidence found when two firms are associated with each other does not extend to lawyers in a co-counsel relationship.[78] As stated earlier, *a showing of actual disclosure must be found.*[79] Pate avers that he has only interacted with Rohn three times in his life[80], all unrelated to this matter.[81] Further, he states he was given Plaintiffs medical files and incomplete set of case pleadings, directly from Huge, not Rohn.[82] As with Huge, Hess has not rebutted Pate's affidavit by presenting evidence of actual disclosure between Pate and Rohn . . . [w]here knowledge is not actual, but imputed based on the presumption that members of a firm share confidences, automatic re-imputation of that same knowledge to another attorney with whom the vicariously disqualified attorney collaborated is unreasonable . . .[83] The trial court must ascertain the material facts in a manner consistent with effectuating any legitimately claimed privilege.[84]

---

[77] (Pate, Dec. Counsel, filed July 1, 2011.)

[78] ANNOT. ABA MODEL RULE PROF.'L CONDUCT 1.10 "Imputed Disqualification: Co-Counsel" annot. at 176.

[79] *Id.; see also Akerly,* 551 F.2d at 544; *Realco Services. Inc. v. Holt,* 479 F. Supp. 867 (E.D. Pa. 1919) (emphasis added).

[80] (Pate, Dec. Counsel.)

[81] *Id.*

[82] *Id.*

[83] *Essex Chem.,* 993 F. Supp. at 252.

[84] *Id.*

In this matter, after exhaustive factual analysis, the Court finds that Hess has not proffered evidence of actual disclosure between Rohn and Pate. Accordingly, the Court finds that under Rule 1.10(a) of the MRPC, disqualification of Pate and the Pate law firm, would be improper.

At the evidentiary hearing on this matter, Hess raised a second argument in support of disqualification of Pate. Pate, prior to starting his own firm, worked as an attorney for W. Mark Wilczynski, P.C., ("Wilczynski"). At the time that Pate worked there. Wilczynski represented JCI and Litwin Sealing Technologies ("JCI and Litwin"), a former subcontractor of Hess and at one point, a named Defendant in this matter. Wilczynski defended John Crane ("JCF") and Litwin; Corporation[85] ("Litwin") in 'toxic tort' litigation, including this case. At the hearing, counsel for Hess asked Attorney Wilczynski to stand before the Court and speak to Pate's employment with him. Wilczynski did so, stating that he employed Pate and further that Pate worked on matters dealing with JCI and Litwin and toxic tort litigation. Hess did not proffer Wilczynski as a witness. Pate conceded that he worked for Wilczynski at the time the firm represented JCI and Litwin but stated that he only engaged in "motion practice" as an associate there. Further, he noted that both Litwin and JCI have been dismissed as Defendants in this matter[86]. Because Pate previously worked for a firm that represented JCI and Litwin, any disqualification issues are guide by MRPC 1.9(a) as it deals with conflict of interests and former clients.[87] Hess never submitted to the Court a formal motion to disqualify Pate under MRPC 1.9(a). This argument was raised for the first time at the evidentiary hearing on this matter. Whether this issue is even before the Court is highly debatable. Nevertheless, in an effort to move this nine year old matter along, the Court will briefly address Hess' ability to motion for disqualification of Pate under MRPC 1.9(a).

---

[85] Plaintiffs originally sued Litwin Pan American Corporation. Litwin Corporation is successor in interest to Litwin Pan American Corporation.

[86] This assertion is erroneous; Litwin and JCI were only dismissed as to Plaintiff's Elizabeth and Arnold Anthony. *See* (Order Granting Stip. Dismissal with Prejudice of Litwin Corp. by Pl.'s Arnold and Elizabeth Anthony, entered Nov. 29, 2011) (Order Granting Stip, Dismissal with Prejudice of JCI by the Plaintiffs Arnold and Elizabeth Anthony, entered Nov. 29, 2011.)

[87] ANNOT. MODEL R. PROF.'L CONDUCT 1.9(a) "Client-Lawyer Relationships: Duties to Former Clients" annot. at 153.

■ Any motion formally filed by Hess to disqualify Pate pursuant to MRPC 1.9(a) would likely be denied. On its face, MRPC 1.9(a) requires some sort of prior attorney-client relationship between the party seeking disqualification and opposing counsel.[88] This requirement guards against the reality that parties who are not clients or former clients will often file conflict of interest motions in an effort to delay litigation.[89] ". . . Motions to disqualify often pose the very threat to the integrity of the judicial process that they purport to prevent. Such motions can be misused to harass opposing counsel, or to intimidate an adversary into accepting settlement . . ."[90] This is why courts, including this one, apply a two-part test to determine whether an attorney should be disqualified under MRPC 1.9(a).[91] The first prong of the test requires that a court determine whether ". . . the party seeking disqualification is a former client . . ."[92] If the first prong of the test is not satisfied, then disqualification under MRPC 1.9(a) is inappropriate. In other words, use of this rule is generally limited to former clients.[93] Hess is not a former client of Wilczynski's. JCI and Litwin, are former clients of Wilczynski. But JCI or Litwin have not filed nor joined in a motion to disqualify Pate. As such, any motion filed by

---

[88] MODEL R. PROF.'L CONDUCT 1.9(a) "[a] lawyer who has *formerly represented a client* in a matter shall not thereafter represent another person in the same or a substantially related matter . . ." (emphasis added).

[89] *See generally* REST. 3D LGOVL § 6 "Judicial Remedies Available to a Client or Non-Client for Lawyer Wrongs: Disqualification from a Representation" cmt. *i* (2000).

[90] *Id.* (quoting *Borman v. Borman*, 378 Mass 775, 393 N.E.2d 847, 855 and n. 18 (Mass. 1979). On alternative grounds for denying a motion to disqualify filed by a non-client, some courts have found ". . . [t]he prohibition applied to attorneys against representation of conflicting interests rests on the duties of an attorney arising from the attorney-client relationship. In the absence of this relationship, the duties of loyalty and confidentiality do not arise . . ." *In Re Yarn Processing Validity Litigation*, 530 F.2d 83, 90 (5th Cir. 1976)

[91] (Order disqualifying Rohn, entered May 25, 2012 ¶ 3 ); *Theodule v. Hess*, Civ. No. 604/2004 (Order disqualifying Rohn ¶ 2)(Super Ct. 2005); *Estate of Joseph Henry v. Hess* Civ. No. 609/2004 (Order disqualifying Rohn ¶ 2) (Super Ct. 2005); *George v. Hovic*, Civ. No. 221/2005 (Order Disqualifying Washburn ¶ 3) (Super Ct. 2005); *Brice v. Hovic*, 769 F. Supp. at. 195; *See also* ANNOT. MODEL R. PROF.'L CONDUCT. "Disqualification Motions" annot. at 167.

[92] *Id.*

[93] ANNOT. MODEL R. PROF.L CONDUCT "Disqualification Motions" annot. at 167 citing to (*In Re Yarn Processing Patent Validity Litigation*, 530 F. 2d 83); *See also In re Corn Derivatives Anti-Trust Litigation*, 748 F. 2d 157, 161 (3d. Cir. 1984).

Hess to disqualify Pate under MRPC 1.9(a) would likely be deemed improper.[94]

## C. Remaining Factors

 The United States Court of Appeals for the Third Circuit has laid out additional factors that courts should balance as part of a determination on the disqualification of an attorney; 1) the former client's interest in attorney loyalty; 2) the current client's interest in retaining chosen counsel; 3) the risk of prejudice to the current client; and 4) the protection of the integrity of the proceedings and maintaining public confidence in the judicial system.[95] It is without question that Hess has a continuing right to Rohn's loyalty with respect to issues of confidentiality and conflicts of interest.[96] Loyalty is one of the most essential elements of an attorney's relationship with a current or former client.[97] But Hess has not proven that Rohn's violation of her attorney client relationship should impute disqualification on Huge or Pate. The second factor, the current client's interest in retaining chosen counsel, generally weighs in favor of the party who wishes to retain counsel of his choice.[98] But this is not an absolute right.[99] In this matter, Huge, first as an associate at Motley Rice and later at Harris & Huge has represented Plaintiffs since the initial filing of this matter in 2004. Plaintiffs chose to retain him after he left Motley Rice and started Harris & Huge. He has invested resources in the case and is familiar with the factual and legal issues involved, all factors that do not support of disqualification.[100] As Plaintiffs did not pick local counsel, Pate, his disqualification is not determinative under this factor.

---

[94] The Court also notes that Hess has a number of other means to challenge Pate's representation in this matter aside from MRPC 1.9(a) including reporting a claim of ethical violations to the appropriate disciplinary body. *See Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).

[95] *In Re Corn Derivatives Anti-Trust Litigation*, 748 F. 2d at 162; *See also Brice v. Hovensa*, 769 F. Supp. at 195 (quotations omitted).

[96] ANNOT. MODEL R. PROF.'L. CONDUCT RULE 1.9. "Disqualification Motions" annot. at 167 (2007).

[97] *Illaraza*, 2012 U.S. Dist. LEXIS 45358, at *34.

[98] *U.S. v. Miller*, 624 F. 2d. 1198, 1203 (3d. Cir, 1980).

[99] *Id.*

[100] *In Re Corn Derivative Anti-Trust Litigation*, 784 F. 3d at 162.

The third factor, prejudice to plaintiff is guided by a review of the types of prejudice Plaintiffs might suffer if Huge or Pate was disqualified in this matter. Factors courts take into account include, what stage of discovery the parties are in and the difficulty regarding the time and expense of finding new counsel.[101] Hess argues that because a scheduling order has not been issued, this matter is in its early stages of the proceedings; thus there is no grave hardship to the Plaintiffs in retaining new counsel at this point in the litigation.[102] It is true that discovery in this matter has not begun, but it would be somewhat disingenuous to say that it would be no grave hardship for Plaintiffs to retain new counsel. As noted earlier, Hess argues that one of the reasons Huge and Pate should be disqualified is because they shared Plaintiffs files and related; documents with Rohn.[103] It can be presumed that if the Court were to find that either Pate or Huge should be disqualified, any attorney who chose to take on representation of the Plaintiffs and the; files and documents allegedly shared by Rohn, Huge and Pate, would soon be faced with the same argument for imputed disqualification by Hess. This could potentially create serious prejudice for the Plaintiffs.

The fourth factor, the protection of the integrity of court proceedings and maintaining public confidence in the judicial system is integral to the Court's determination in this matter . . . "when a court finds a [ethical] violation of . . . the public interest that may render disqualification appropriate may be at its zenith."[104] In this matter, the Court does not find that Huge or the Harris; & Huge Law Firm have violated the rules of ethics in this matter. Nor does it find that Pate or the Pate Law Firm have done so. .

## IV. CONCLUSION

After a review of the record in this matter, the Model Rules of Professional Conduct and applicable case law the Court finds that Hess' Motion to Disqualify Plaintiffs' Counsel, Attorney Theodore Huge Esq., and the Law firm of Motley Rice, LLC must be denied. Further, Hess'

---

[101] *Illaraza v. Hovensa*, L.L.C., 2012 U.S. Dist. LEXIS 453582, at *32-34.

[102] (Hovic, Mot. Disqualify Pl.s' Counsel, Pate & Huge ¶ 5.)

[103] (*Id.* at ¶ 4.)

[104] *Illaraza v. Hovensa*, 2012 U.S. Dist LEXIS 45358, *37 (citing *In re David Cutler Indus.*, 432 B R. 529, 541 (E.D.Pa.2010)).

Motion to Disqualify Plaintiffs' Counsel, Attorney Theodore Huge, Esq., Attorney Russell Pate Esq., and their respective law firms, Harris & Huge LLC and the Pate Law firm must also be denied. An order consistent with this opinion will follow.

**DONE AND SO ORDERED** this 6th day of August, 2012.