**MCKENZIE CONSTRUCTION d/b/a V.I. BUILDING SPECIALTIES and JAMES B. KING, Plaintiffs**

**v.**

**ST. CROIX STORAGE CORP., d/b/a SUN COMMERCIAL PARK, SUN STORAGE PARTNERS, L.P., and JERRY TOBIN, Defendants**

No. 91-141

District Court of the Virgin Islands

Div. of St. Croix

April 23, 1997

LEE J. ROHN, ESQ., *for Plaintiffs*

KEVIN RAMES, ESQ., and Daryl C. Barnes, Esq., *for Defendants*

RESNICK, *Judge*

### ORDER GRANTING MOTION TO DISQUALIFY
### AND DENYING MOTION FOR SANCTIONS

THIS MATTER is before the Court on defendants St. Croix Storage Corp. and Sun Storage Partners, L.P.'s motion to disqualify the law firm of Rohn & Cusick as counsel for plaintiffs in this action. Plaintiffs filed an Opposition, defendant filed a Reply asserting new allegations. Plaintiffs responded further as directed by the Court and have requested "oral argument so that Attorney Moorehead can take the stand and inform the Court of the true nature of what occurred here." Plaintiffs' Reply Brief, p.1.

Plaintiff McKenzie Construction is a local lumber retail company who brought this damages action against defendants St. Croix Storage Corp. for conversion of lumber. The Court ordered the matter submitted to mediation and later appointed Attorney Lisa Moorehead as mediator. (See Order Appointing Mediator dated May 26, 1994). Mediation was unsuccessful and the parties have resumed preparation for trial.

In seeking to disqualify the firm of Rohn & Cusick, defendants claim that the firm's hiring of Attorney Moorehead, who was the

mediator appointed by the Court to settle this case, presents an irreparable conflict of interest in contravention of the rules governing the conduct of mediators and attorneys alike. Defendants reason that Moorhead's position as mediator allowed her access to "a wide range of confidential information derived from her private consultations" with the parties. Plaintiffs responded that although Moorehead may be subject to disqualification, she is simply "of counsel" to the law firm of Rohn & Cusick and that, under Virgin Islands law, the disqualification of the law firm is not automatic. Moreover, plaintiffs assert that although no confidences were exchanged in the mediation, the firm had created a "cone of silence" around Moorehead, insulating her from the case. However, defendants countered that since being hired by Rohn & Cusick in September of 1996, Moorehead had inserted herself into the case by meeting with plaintiff about the case. The Court requested that plaintiffs file a direct response to defendants' allegation. In their response, plaintiffs submit an affidavit of Attorney Moorehead in which she avers that a "cone of silence" has been erected at Rohn & Cusick and admits that she met with the investigator in order to advise him that he could be civilly liable for attempting to settle a case with a represented party. She claims that she did not discuss the merits of the instant case. Defendants also seek the imposition of sanctions against plaintiffs' law firm for filing false affidavits.

■ After review of the record and the submissions of the parties, this Court concludes that there exists a sufficient basis for resolution of this issue on the pleadings alone. Accordingly, the request for a hearing is denied.

### DISCUSSION

■ A motion to disqualify counsel requires the court to balance the right of a party to retain counsel of his choice and the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. *Powell v. Alabama*, 287 U.S. 45, 53, 77 L. Ed. 158, 53 S. Ct. 55 (1932). The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings

and the purpose of granting such motions is to eliminate the threat that the litigation will be tainted. *United States Football League v. National Football League*, 605 F. Supp. 1448, 1464. The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it. *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385-86 (3d Cir. 1972), *cert denied* 411 U.S. 986, 36 L. Ed. 2d 964, 93 S. Ct. 2271 (1972). Disqualification issues must be decided on a case by case basis. *Rogers v. Pittston Co.*, 800 F. Supp 914, 924 (E.D.Va 1981).

This case presents the question whether a law firm must be disqualified from representing a party when it employs an attorney who was formerly the mediator in the identical litigation. Plaintiffs essentially concede that Attorney Moorehead should be screened from involvement in the case. Indeed, they "do not dispute that Ms. Moorehead, herself, may be subject to disqualification." Plaintiffs' Opposition, page 1. They argue, however, that the "cone of silence" erected around Attorney Moorhead is sufficient under the rules and case law, and that the facts do not warrant disqualification of the entire firm. Defendants maintain that Moorhead's contact with the investigator, subsequent to the date that the "cone of silence" was reportedly constructed, constitutes a violation of the relevant ethical standards and presents a more compelling case for disqualification.

The leading case on attorney disqualification in this district is *Bluebeard's Castle, Inc. v. Delmar Marketing, Inc.*, 886 F. Supp. 1204, 1207 (D.C.V.I. 1995).[1] In that case, this Court ruled that where an attorney accepts representation of a party adverse to a former client in a substantially related matter, the Court "presumes that confidences were disclosed during the previous relationship and that such confidences would be used against the former client . . . [and] does not require that the moving party be able to show that confidences actually were passed on or to detail their contents."

---

[1] The Court notes that plaintiffs have failed to distinguish Bluebeard's and instead, seek to rely on *Brice v. HOVIC*, 769 F. Supp. 193 (D.C.V.I. 1990). However, as noted by the court in Bluebeard's, Brice held that disqualification is not warranted where there is no "substantial relationship" between the former representation and the present one. In this case, the matters are the same.

(citations omitted.) The Court went on to find that an attorney faced with such a prospect should, at the least, fully disclose the fact to that party or, at most, refuse such representation. Failure to honor such conflict would result in the disqualification of the attorney and his entire firm. *Id*. at 1208-1210. The Court relied on the MODEL RULES OF PROFESSIONAL CONDUCT in disqualifying the attorney and his law firm.

The finding of a relationship in *Bluebeard's*, which required the Court to order disqualification was based on an examination of the nature, purpose and result of the interaction, the client's subjective impressions, and the attorney's failure to disclose his former representation. 886 F. Supp. at 1208. The Court found that the client consulted the attorney for the purpose of representation; that the consultation involved the exchange of confidential information; and that disqualification represented a balancing of the public's interest of trust in the judicial system with the litigant's right to expect loyalty from his attorney.

The *Bluebeard's* court relied on *McNamara v. Boehm*, Civ. No. 92/141(Terr. Ct. V.I. 1992) where the Territorial Court ruled that an attorney who had represented a client in a divorce could not later represent an employee of that client in an action adverse to the former client. Guided by the standards set forth in RULES 1.9[2] and 1.10(a) of the MODEL RULES OF PROFESSIONAL CONDUCT, the court announced that disqualification is required "where it appears that

[2]RULE 1.9 of the ABA MODEL RULES OF PROFESSIONAL CONDUCT reads as follows:

**CONFLICT OF INTEREST: FORMER CLIENT**

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b) A lawyer shall not knowingly represent a person in the same or substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by rules 1.6 and 1.9(c) that is material to the matter;

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter

the subject matter of a pending suit in which the attorney represents an interest adverse to a prior [client] is such that during the course of the former representation the attorney 'might have acquired substantially related material.'" *Id.* at 4, *citing Brice*, at 6. The court characterized the rules as "prophylactic measures [enacted] to prevent any possibility, however slight, that confidences and secrets obtained from a client during a previous relationship may subsequently be used against him." *Id.* at 5.

■ The instant motion to disqualify differs somewhat from the cases cited above, in that it focuses on Attorney Moorehead's role as a mediator who was subsequently hired by the law firm in question. However, the analysis is the same. First, although it is arguable that mediation is not, technically, an adversarial process as is the traditional practice of law, where there is no specific rule that speaks to the issue, courts refer to the MODEL RULES as a guide to regulate the conduct of the attorney who serves as a mediator in Alternate Dispute Resolution [ADR] proceedings and is later involved in the matter in which he or she mediated. Daigneault, Michael G., *Lawyers as Mediators: Traps. . . Pitfalls . . . Hazards*, 43 Jan. Fed. Law. 10 (and cases cited therein)[3]. In both situations, the duty of loyalty is at stake. Defendants assert that as mediator Moorehead was privy to confidential information which would be relevant to the present litigation. They argue that under the existing local and ABA rules, her disqualification should be imputed to the entire firm. Mediation is defined as the private, informal dispute resolution process in which a neutral third

---

(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as rule 1.6 or Rule 3.3 would permit or require with respect to a client.

[3] Additionally, in response to the emerging problems presented by mediators turned attorneys, the American Bar Association, in conjunction with the American Arbitration Association and the Society of Professionals in Dispute Resolution, has drafted a code of professional responsibility tailored specifically for ADR mediators. The Draft Rules recommend that mediators be prohibited from representing one party to the dispute against another in future legal proceedings related to the subject of the litigation. *See* Smiley, Alison, *Professional Codes and Neutral Lawyering: An Emerging Standard Governing Nonrepresentational Attorney Mediation*, 7 Geo. J. Legal Ethics 213 (1993).

person, the mediator, helps disputing parties to reach an agreement. BLACK'S LAW DICTIONARY, 6 ed. at 981.

The recent case of *Poly Software International, Inc. v. Su*, 880 F. Supp. 1487 (D. Utah 1995), discusses the identical issue presented in the case *sub judice*. In that case, two parties agreed to mediate a copyright action which they were defending. However, soon after the mediated settlement the parties sued each other. One of the parties retained the mediator as his counsel. The other party moved to disqualify the mediator-turned-attorney in light of his prior status as mediator in the previous action. The District Court disqualified the attorney and his law firm from participating in the litigation and held that an attorney who serves as a mediator cannot subsequently represent anyone in a substantially related matter without the consent of the original parties. The court reasoned that mediators routinely receive and preserve confidences in much the same manner as an attorney. The court referred to the MODEL RULES OF PROFESSIONAL CONDUCT and concluded that where the mediator was privy to confidential information, the applicable ethical rules imposed the same responsibilities as the rules relating to an attorney's subsequent representation of a former client. The court also considered the rule prohibiting judges and other adjudicative officers from representing anyone in connection with a matter in which he or she participated "personally and substantially." MODEL RULE 1.2.

Likewise, in *Cho v. Superior Court*, 39 Cal. App. 4th 113, 45 Cal. Rptr. 2d 863 (C.A. Ca. 1995), a former judge and his law firm were disqualified from representing a party in an action in which the former judge had participated in settlement conferences. That court relied on ABA MODEL RULE 1.12 which prohibits a lawyer who has participated personally and substantially in a matter as a judge or adjudicative officer, from representing anyone in connection with the same matter. *Id*. at 867. The Court compared the judge's role in the proceedings to that of a mediator, and found that the position necessarily involved the exchange of confidences going to the merits of the case. The court cautioned that "no amount of assurances or screening procedures, no 'cone of silence' could ever convince the opposing party that the confidences would not be used to its disadvantage." *Id*. at 869. The Court concluded that

based on the nature of the attorney's prior participation, there is a presumption that confidences were revealed, and the attorney should not have "to engage in subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that representation." *Id*. Thus, the rule of the cases is that a mediator should never represent a party to the mediation in a subsequent related or similar matter.

It is against this backdrop that this Court must determine whether Attorney Moorehead, who was the mediator in this identical action, may have received confidences which may be used to the disadvantage of defendant in this case, warranting her disqualification and that of her law firm. Guided by the case law and experience, this Court notes that the very nature of mediation requires that confidences be exchanged. Hence, LOCAL RULE OF CIVIL PROCEDURE 3.2(C)(2) provides that a mediator appointed in this jurisdiction must be impartial and is required to disqualify himself or herself "in any action in which he/she would be required under 28 U.S.C. § 455 to disqualify him/herself if he/she were a judge or Magistrate Judge." Title 28, U.S.C. § 455 requires such a judicial officer to disqualify himself or herself (1) where the attorney served as a lawyer, the associate lawyer, a witness or a judge in the case; or (2) where the attorney has served in governmental employment and participated in the case as a counsel, adviser or material witness.

John Landers, Vice President of defendant St. Croix Storage Corp., states by affidavit that he was present during the mediation conference and met with Attorney Moorehead separately and together with the other parties. He states that he openly discussed "the facts of the matter, the financial status and capability of Sun Storage to either pay a settlement figure or to pay a verdict, the status and degree of involvement of certain of the partners . . . in the management and operation . . . and the trial strategy that was to be employed in the absence of settlement of this matter." Plaintiffs claim that all discussions in the case were done in a group setting and not "confidential". They further argue that any information received would have been discovered during the normal course of litigation.

■ Plaintiffs' entire argument against disqualification lacks credibility, is unsupported by legal analysis, and completely ignores the existing standards governing attorney conduct. This Court finds, and many commentators agree, that during mediation parties are encouraged to disclose the strengths and weaknesses of their positions, in an effort to arrive at a settlement. Protection of confidences in such a setting strengthens the incentive of parties to negotiate without fear that the mediator will subsequently use the information against them. Additionally, the rules regulating attorney conduct place the onus on the attorney to "remain conscious of the obligation to preserve confidences and maintain loyalty." 886 F. Supp. at 1207. It is clear from the record that the parties met to negotiate a settlement. It is undisputed that the mediation lasted at least one hour. It is not unreasonable to assume that in light of the nature and purpose of the proceeding, that confidential information was disclosed by the parties. Notwithstanding Attorney Moorhead's statements to the contrary, the present situation presents such a serious affront to the policy that forms the basis of the rules, that this Court has no choice but to conclude that Attorney Moorhead must be disqualified.

## DISQUALIFICATION OF THE FIRM

This Court further finds that disqualification of Attorney Moorehead should be imputed to the other members of the firm. The cases and MODEL RULE 1.10(a)[4] require such disqualification. Plaintiffs' fixation on *Brice* to support their argument that such disqualification is not automatic, signifies a fundamental misunderstanding of that case. The *Brice* case simply held that where there is no "substantial relationship" between the former representation and the present one, disqualification was not warranted. Here, the former representation and the present are one and the same, thus obviating the need to determine the existence of a "substantial relationship", and creating a stronger case for disqualification.

---

[4]The rule states: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9 or 2.2."

113

In addition, the Court is disturbed by Attorney Moorehead's contact with Mr. Pierre Tepie, an investigator associated with this case. Partly in response to a Motion for Sanctions filed by plaintiffs, Mr. Tepie, who is a self-employed investigator and process server, stated, via affidavit that he was hired by Shirryl Hughes, on behalf of a defendant in this case, to attempt to negotiate an out of court settlement. He further stated that after such attempted negotiation, he was contacted by Attorney Moorehead, who attempted to persuade him to discontinue his efforts. Attorney Moorehead responded, also via affidavit, that she contacted Tepie with regard to his attempted negotiation because she "thought it was wise to inform him that he could be civilly liable for contacting a represented party." She claims she did not know whom he worked for. Moorehead, who was reportedly excluded from the case, does not explain in her affidavit, the manner in which she learned about Tepie's involvement.[5] In any event, this court finds that Moorehead's contact with an agent of the defendants in this very case, implicates the effectiveness of the measures allegedly adopted by her employer to avoid her involvement in this matter. Accordingly, disqualification of the law firm of Rohn & Cusick is necessary to safeguard the integrity of the ongoing litigation and to eliminate the threat that the proceedings will be tainted.

### THE MOTION FOR SANCTIONS

Counsel for defendants also seek an order imposing sanctions on plaintiffs' counsel for filing false affidavits with the court. In particular, counsel refers to plaintiffs' attorneys' affidavits attesting to the exclusion of Attorney Moorehead from the case. Defendants' counsel submits that the evidence of Moorehead's subsequent involvement in the case renders the earlier affidavits false, exposing plaintiffs' counsel to sanctions ranging from suspension to disbarment.

■ Federal courts have inherent authority to impose sanctions upon parties and counsel for filing false or seriously misleading

---

[5] Plaintiffs' memo presents some unsworn facts about Moorehead overhearing a telephone conversation. However, these facts were not presented by affidavit and lack the conviction of a sworn statement.

114

affidavits. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991). However, because of their effect, inherent powers must be exercised with restraint and discretion. *Id*. at 44 . A court's power to sanction attorneys should be reserved for those cases in which the conduct is egregious, and no other basis for sanction exists. *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995). Additionally, the sanctions should be tailored to address the harm identified. *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65 (3d Cir. 1994).

■ The conduct under scrutiny, here, is the integrity of plaintiffs' attorneys' affidavits regarding Attorney Moorehead's involvement in this case after being hired by Rohn & Cusick. Specifically, the affidavits involved statements regarding Moorehead's contact with Mr. Tepie. It is clear from the record that the conduct of plaintiffs' attorneys is less than exemplary; however, in light of plaintiffs' final response, this Court finds that the sworn statements, taken together, are not patently false. Moreover, even absent such contact, there is ample material in the pleadings which would lead a court to conclude that Moorehead's association with the law firm of Rohn & Cusick creates a conflict of interest warranting disqual-ification. Accordingly, the Court's decision to disqualify the firm from litigating this action, including the loss of revenue that it portends, provides the intended result and embodies a sanction in and of itself.

## CONCLUSION

Based on the foregoing, this Court finds that, as the mediator in this case, Attorney Moorehead is presumed to have received confidential information going to the merits of the case and must be disqualified. This Court also finds that in addition to the mandate of the MODEL RULES, the screening procedure reportedly employed at the law firm of Rohn & Cusick failed to prevent Moorehead's subsequent involvement in this matter, further bol-stering the court's conclusion that the law firm of Rohn & Cusick must also be disqualified. Finally, the Court finds that plaintiffs' affidavits herein do not warrant the imposition of sanctions. Accordingly, none will be imposed.

Now, therefore, it is hereby
ORDERED AS FOLLOWS:

1. that the motion to disqualify Attorney Lisa Moorehead and the law firm of Rohn & Cusick is GRANTED;

2. that the motion for imposition of sanctions is DENIED; and

3. that this Order will be stayed for ten (10) days to allow the parties an opportunity to appeal to the District Court Judge.

DATED: April 23, 1997