

**FILED**

March 15, 2021
ST-2020-CV-00179
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **CARIBBEAN OFF THE GRID PLAZA, LLC,** ) | CASE NO. ST-2020-CV-00179 |
| ) | |
| ) | ACTION FOR PIERCING THE CORPORATE |
| ) | VEIL, TORTIOUS INTERFERENCE WITH |
| **Plaintiff,** ) | EXISTING CONTRACTUAL RELATIONS, |
| ) | TORTIOUS INTERFERENCE WITH |
| ) | CONTRACTUAL RELATIONS, TORTIOUS |
| **-vs-** ) | INTERFERENCE WITH BUSINESS RELATIONS, |
| ) | DECLARATORY RELIEF, CONVERSION, |
| ) | DISTRAINT, TROVER, CIVIL CONSPIRACY, |
| **HOOMAN PEDRAM, individually, and** ) | VIOLATION OF FRAUDULENT TRANSFERS |
| **JOHN LINK, individually,** ) | ACT |
| ) | |
| **Defendants.** ) | JURY TRIAL DEMANDED |

Cite as: 2021 VI Super 33U

## MEMORANDUM OPINION & ORDER

Pending before the Court are:

1. Defendants' Motion to Disqualify, which was filed on June 29, 2020;

2. Defendants' Amended Motion to Disqualify, which was filed on July 2, 2020;

3. Plaintiff's Response to Pedram and Link's Amended Motion to Disqualify, which was filed on July 6, 2020; and

4. Defendants' Reply in Support of Their Amended Motion to Disqualify, which was filed on July 24, 2020.

### I.     INTRODUCTION

¶1     This case involves a dispute between a landlord, Caribbean Off the Grid Plaza, LLC, ("COTG"), and its tenant, Hoolink, LLC, a limited liability company, formed by Hooman Pedram and John Link.[1] Defendants' Amended Motion to Disqualify argues that Attorney Michael L. Sheesley ("Sheesley") should be disqualified from representing COTG for the following reasons: (1) "Pedram discussed issues essential to all counts in the Complaint with Attorney Sheesley; and (2) Attorney Sheesley is a necessary witness in this action."[2] In opposition, Sheesley argues that

---

[1] Plaintiff's First Amended Complaint ¶ 13.

[2] Defendants' Motion to Disqualify at 2.

"the alleged conduct does not warrant disqualification,... the Defendants lack standing to disqualify, [and that he is] not a necessary witness." As explained below, the Court determines that: (1) Defendants do not lack standing to move to disqualify Sheesley; (2) Sheesley's conduct and communications to Pedram did not violate the Model Rules of Professional Conduct; and (3) Sheesley's potential duel role as counsel and a witness in this case does not disqualify him to represent COTG.

## II.     FACTUAL AND PROCEDURAL BACKGROUND.

¶2     In 2017, Hooman Pedram and John Link formed a limited liability company known as Hoolink, LLC.[3]

¶3     In December 2017, Hoolink, as a Tenant, entered into a Commercial Lease, with Caribbean Off the Grid Plaza, LLC, as Landlord, for the following:

> That portion of Parcels No. 18 Remainder, 19-1 & 19-2 Estate Thomas, No. 6H New Quarter, St. Thomas, VI, presently identified as Bay 106 and the back side of previously known bay 104 and 105 of the Mall Building, containing approximately [+/-6000] square feet ("Floor Area").

(hereinafter referred to as the "Premises").[4]

¶4     The Lease is for a term of 5 years starting December 1, 2017.[5]

¶5     Rent is due on the first of each month and in the event of non-payment within 10 days of the due date, a late payment service charge is due.[6]

¶6     "In December 2019, a novel (new) coronavirus known as SARS-CoV-2 ("the virus") was first detected in Wuhan, Hubei Province, People's Republic of China, causing outbreaks of the coronavirus disease COVID-19 that spread globally."   The U. S. Secretary of Health and Human Services (HHS) declared a public health emergency on January 31, 2020.[7]

¶7     Hoolink failed to pay its rent for the month of March 2020 when due.[8]

---

[3] Pl.'s First Amend. Compl. at ¶ 13.

[4] Pl.'s First Amend. Compl. at ¶¶ 13, 22 and 27.

[5] Pl.'s First Amend. Compl. at ¶ 28.

[6] Pl.'s First Amend. Compl. at ¶ 32-33.

[7] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

[8] Pl.'s First Amend. Compl. at ¶ 32.

¶8      On March 13, 2020, the President of the United States declared the pandemic "of sufficient severity and magnitude to warrant an emergency declaration for all states….[and] territories."[9]

¶9      On March 13, 2020, the Governor of the Virgin Islands declared a state of emergency requiring, *inter alia*, "expeditious action [] necessary to protect the health, safety, and welfare of the residents of the Virgin Islands, slow the spread of the COVID-19 outbreak, reduce the number of people infected, and avoid strain on the health care system."[10]

¶10      On July 10, 2020, COTG filed its First Amended Complaint alleging that Defendants Hooman Pedram ("Pedram") and John Link ("Link") tortiously interfered with existing and prospective contractual relations and engaged in a civil conspiracy, amongst other wrongdoings.

¶11      The First Amended Complaint alleges that on March 18, 2020, Pedram told COTG that Hoolink did not have the rent money and that "[i]t doesn't matter [because] we are closing our [ ] doors tomorrow anyway." According to COTG, Pedram also "communicated Hoolink's intent to abandon the Leased Premises and continue in breach of the Lease."[11]

¶12      The First Amended Complaint alleges that on March 18, 2020 "Mr. Pedram took to Facebook to disparage the Landlord for apparently having the temerity to expect rent to be paid on time…."[12] The post on Pedram's Facebook account stated "Jesus. The EDA collecting landlord is already up my [ ] for rent. I asked him what he wants for me to do the bowling alley can't have more than 50 people. Rent is 8 days late."[13] As alleged in Defendants' Amended Motion to Disqualify, Sheesley commented on Pedram's Facebook post and "[a]fter reading the comment, Pedram deleted it and blocked Attorney Sheesley from his Facebook page. Not relenting, Sheesley then attempted to repost it but was unable to because he had been blocked."[14] In response, Sheesley privately messaged Pedram on Facebook and communicated the following:

> Sheesley:      You must have accidently deleted my comment.
>
> Sheesley:      "I imagine your rent was due on the 1st and you had a 10 day grace period. It's the 18th so you are 8 days after the grace period but actually 18 days late.

---

[9] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

[10] https://www.vi.gov/wp-content/uploads/2020/03/2020-03.23-12-54pm-Order-Suppl-Exec-Order-re-Restrictions-to-Movement-Gatherings-Operations-of-Business-Govt.-and-Schools-.pdf

[11] *Id.* at ¶ 42.

[12] *Id.* at ¶ 43.

[13] Defs.' Amend. Mot. to Disqualify at 2.

[14] *Id.* at 3.

| Sheesley: | There is no actual government ban on more than 50 people in a place at one time, govt only not issuing permits. In any event that only happened a few days ago. |
| --- | --- |
| Sheesley: | Which means you were late on your rent anyway and probably shouldn't complain on social media about it." |
| Sheesley: | You own multiple businesses and pieces of real property... maybe just pay the rent.[15] |

¶13    In a second private message, Sheesley said "With the social media virtue signaling I'm assuming you will be paying all your employees full salary during any business interruption."[16] According to Defendants' Amended Motion to Disqualify: "[b]ecause Pedram blocked Attorney Sheesley, he could not see Attorney Sheesley's attempt to communicate with him. But, Attorney Sheesley again remained undeterred in his efforts to confront Pedram about a lease for a purported non-client."[17] On the same day, March 18, 2020, Sheesley text messaged Pedram on his personal phone number a screenshot of the Facebook messages and asked "King, Why you blocking me?"[18] Their conversation via text message is as follows:

| Pedram: | I took the post down. You are still blocked. |
| --- | --- |
| Sheesley: | Ha! Quit being a puss |
| Sheesley: | Don't dish it on social media if you can't take it |
| Pedram: | Also last night cops went to every place with more than 50 and shut them down. |
| Sheesley: | Even Garth said you are thin skinned |
| Pedram: | I guess I am. |
| Sheesley: | Well they can't do that. I'll be addressing that with them in the next couple days. On STJ it was health Dept. Govt has zero authority to do that at this point. |
| Pedram: | Your still blocked. But we can stay friends on text. |
| Sheesley: | You'll get over it in less than 20 days...just like the virus[19] |

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 4.

[19] *Id.*

¶14    On March 19, 2020, Pedram texted Sheesley a screenshot of an email from Chris Sharpless communicated to Hooman and Link "...please be advised that absent receipt of those funds due by 4PM today, we will have no choice but to proceed to enforce those pertinent terms and conditions as prescribed in our lease agreement. We look forward to having this monetary default cured immediately."[20] Pedram sent another text message to Sheesley that stated: "...Beach bar and Greengos got shutdown for having more than 50 people, 10,000 fine and license taken away and they won't be able to get it back until they receive a court date. I saw the ticket they were issued earlier...so much for your theory."[21]

¶15    At issue is whether the correspondence between Sheesley and Pedram rise to a level of misconduct that should disqualify Sheesley from representing COTG in this matter.

¶16    According to both parties, Sheesley did not represent COTG in a legal capacity until after the course of the above mentioned communications.[22] However, once retained, Sheesley "then proceeded to immediately file the instant action despite (1) his communications with Pedram; and (2) that those communications directly relate to the allegations contained in his Complaint."[23]

¶17    At a hearing on August 4, 2020, Sheesley informed this Court that he has "known Mr. Pedram for almost 10 years."[24] He apprised the Court that he did not know how long they have been friends on Facebook, but "the first text message that [he and] Mr. Pedram ever exchanged was in 2012...."[25] Sheesley explained the extent of their relationship and communication. In closing, he stated "there are lots of people that I speak to on a regular basis and speaking to someone is not giving someone legal advice...this is certainly not something that I want to bring before the Court...but I don't believe this is an ethical violation."[26] The Defendants concluded the hearing by arguing that "Attorney Sheesley has become a witness to our state of mind and that we have the right to due process, to cross-examine Mr. Sheesley because what he has done is created an insurmountable conflict where he's representing one thing on behalf of his client and he has information and conversations with our client that indicated...something very different than what he is alleging."[27]

¶18    Significantly, the First Amended Complaint does not include the national and global events that began in February and March 2020 and continue to this date: namely the COVID-19 pandemic and the executive orders and proclamations issued by the Governor of the Virgin Islands which

---

[20] *Id.* at 5.

[21] *Id.*

[22] *Id.*; *See also* August 4, 2020 Hearing Transcript at p 3 ¶16 ("March 26th was the first contact that the plaintiff had with me, I believe. The 25th or the 26th of March. That's the first contact that I ever had with that entity, Your Honor.").

[23] Defendants' Amended Motion to Disqualify at 5.

[24] August 4, 2020 Hearing Transcript p 3 at ¶6.

[25] *Id.* at ¶ 8-12.

[26] *Id.* at p 13 ¶¶ 22- 25 and p 14 at ¶¶ 1-6.

[27] *Id.* at p 15 at ¶¶ 10-17.

eventually ordered the public and non-essential workers to remain at home, closed all bars, limited restaurants to take-out and eventually resulted in reducing Chicken n' Bowling's capacity from 1,000 to 500 and then to 10 persons from March 21, to March 25, 2020.

## III.    LEGAL STANDARDS

### a.  Standing

¶19    *Fenster v. Dechabert* (Dunson, J.) addressed standing to file a motion to disqualify legal counsel and explained that standing in the Virgin Islands "is at best a non-jurisdictional claims-processing rule"[28] that is subject to waiver should the party asserting the issue fail to raise it in a timely manner.[29]    Finding it sound and persuasive, this Court also adopts the following analysis determining that an attorney-client relationship is not required to seek an attorney's disqualification:

> "There is a split of authority on whether an opposing party has standing to file a motion to disqualify counsel." "The first, and more restrictive view, is that only a current or former client has standing to seek an attorney's disqualification. The opposing view holds that an attorney-client relationship is unnecessary" and permits courts to confer standing based on the applicable ethical rule that requires "an attorney [to] come forward if he has knowledge of an actual or potential violation of a Disciplinary Rule." Neither the Supreme Court of the Virgin Islands nor the Superior Court has specifically defined the parameters of standing in the context of an opposing party's motion to disqualify counsel and the Third Circuit has not definitively ruled on the issue.[30]

¶20    Following *Fenster v. Dechabert*, this Court also determines that an attorney-client relationship is unnecessary to permit an opposing party to file a motion to disqualify counsel, and

---

[28] *United Corp. v. Hamed*, 2016 V.I. 303 (citing *Hodge v. Bluebeard's Castle, Inc.*, 2015 V.I. 671, 687 n. 8).

[29] *Fenster v. Dechabert*, Super. Ct. Civ. No. SX-16-CV-343, 2017 WL 4969896, at *5 (V.I. Super. Cr. Sept. 27, 2017) (citing *Benjamin v. AIG Ins. Co. of P.R.*, 2012 V.I. 564–65).

[30] *Fenster v. Dechabert*, Super. Ct. Civ. No. SX-16-CV-343, 2017 WL 4969896, at *5 (V.I. Super. Ct. Sept. 27, 2017) (footnotes omitted) (citations omitted) (first quoting *Olive v. DeJongh*, 2012 WL 12505274, at *7, 2012 V.I. LEXIS 71, *6 n. 4 (V.I. Super. Ct. May 14, 2012) (citations omitted); then quoting Keith Swisher, Article, *The Practice and Theory of Lawyer Disqualification*, 27 GEO. J. LEGAL ETHICS 71, 88 n.62 (citing 25 AM. J. TRIAL ADVOC. 17, 18, 21–22 (2001)) (other citations omitted); *Id.* (collecting cases); then quoting *Santander Sec. LLC v. Gamache*, 2017 WL 1208066, at *3, 2017 U.S. Dist. LEXIS 50189, at *8–9 (E.D. Pa. Apr. 3, 2017) (citing *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984)) (internal quotation marks omitted); then quoting *Olive*, at *6 n.4 (declining to "extensively analyze" the standing issue because it was not raised by either party); and then citing *Gamache*, 2017 WL 1208066, at *3, 2017 U.S. Dist. LEXIS 50189, at *7–8 ("Whether a non-client may seek opposing counsel's disqualification is far from clear") (citing *In re Corn Deriv. Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir. 1984) (The Third Circuit "[a]ssum[ed] without deciding that a motion to disqualify must be brought by a former client") (unpublished).

confers standing based on the applicable ethical rule that requires attorneys to come forward if he or she has actual or potential knowledge of an ethical breach.

### b. Disqualification of an Attorney

¶21 The applicable standard for disqualification of an attorney and the Court's authority to do so was also addressed in *Fenster v. Dechabert*, (Dunston J.):

> "The Court is tasked with supervising the conduct of attorneys that appear before it; and has inherent power to disqualify any attorney if it finds such action is warranted." "It is at the Court's discretion to determine whether disqualification is warranted." "The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings and the purpose of granting such motions is to eliminate the threat that the litigation will be tainted." Although "doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a heavy burden and must meet a high standard of proof before a lawyer is disqualified." "Vague and unsupported allegations are not sufficient to meet this standard." "Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary."[31]

¶22 The resolution of a motion to disqualify counsel typically involves a two-step inquiry: "Once courts find or suspect a substantive violation, they then engage in a balancing test to determine whether disqualification is the appropriate remedy for the case."[32] The Court in *Fenster* looked to the "Comments accompanying the ABA's Model Rules of Professional Conduct for guidance"[33] in considering whether a substantive violation occurred. "Prior to February 1, 2014, Supreme Court Rule 203 provided that the ABA's Model Rules of Professional Conduct governed the conduct of members of the Virgin Islands Bar. However, effective February 1, 2014, Supreme Court Rule 211, which established the Virgin Islands Rules of Professional Conduct, governs the conduct of Virgin Islands attorneys."[34] "Because the Virgin Islands rules are

---

[31] *Fenster v. Dechabert*, Super. Ct. Civ. No. SX-16-CV-343, 2017 WL 4969896, at *2 (V.I. Super. Ct. Sept. 27, 2017) (footnotes omitted) (citations omitted) (first quoting *Farrell v. Hess Oil V.I.*, 57 V.I. 50, 57, 2012 WL 3536799 (Super. Ct. 2012) (citing *McKenzie Construction v. St. Croix Storage Corp.*, 961 F.Supp. 857, 859, 37 V.I. 105 (D.V.I. 1997)); then quoting *Id.* (citing ANNOT. MODEL R. PROF.'L CONDUCT "Preamble and Scope: Disqualification" annot. at 9 (6th ed. 2007)) (other citation omitted); then quoting *Rodriguez v. Spartan Concrete Prods., LLC*, 2017 WL 1508179, at *2, 2017 U.S. Dist. LEXIS 62923, at *5 (D.V.I. Apr. 25, 2017) (quoting *McKenzie*, 961 F.Supp. at 859) (internal quotation marks omitted); then quoting *Farrell*, 57 V.I. at 57 (citations omitted); then quoting *Denero v. Palm Horizons Mgmt., Inc.*, 2015 WL 1004672, at *3, 2015 U.S. Dist. LEXIS 25864, *8 (D.V.I. Mar. 4, 2015) (quoting *Cohen v. Oasin*, 844 F.Supp. 1065, 1067 (E.D. Pa. 1994)) (internal quotation marks omitted); and then quoting *Denero*, at *7-8 (citing *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J. 1993)) (unpublished).

[32] *Id.*

[33] *Fenster*, *6.

[34] *In re Nevins*, 2014 V.I. 804 n. 1 (citing Promulgation Order No. 2013-0001 (V.I. Dec. 23, 2013)).

substantively identical to the ABA rules, previous decisions interpreting and applying the ABA rules remain equally applicable in the interpretation and application of the Virgin Islands rules."[35]

¶ 23      "Thus, for clarity and convenience, in this opinion we will refer to the currently applicable Virgin Islands Rules of Professional Conduct as embodied in Supreme Court Rule 211"[36] and the Comments accompanying the ABA's Model Rules for interpreting and applying the standards.

### c. Lawyer as Witness

¶24      Virgin Islands Rule of Professional Conduct, as embodied in Supreme Court Rule 211.3.7, governs the issue of lawyer as witness:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> > (1) the testimony relates to an uncontested issue;
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> > (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 211.1.7 or Rule 211.1.9.[37]

¶25      In general, lawyers are prohibited from simultaneously serving as an advocate and a necessary witness, except under specific circumstances.[38] The narrow exception to this rule is that "an attorney may act as an advocate at trial in which the lawyer is likely to be a necessary witness."[39] A "necessary witness has been defined in this jurisdiction as an individual whose possible testimony is found to be 'relevant, material, and unobtainable elsewhere.'"[40]

## IV. ANALYSIS

### a. Pedram and Link have Standing to Seek Disqualification of Sheesley

¶26      The Court finds that the Defendants do not lack standing to seek disqualification of Sheesley. In its Response, COTG argues that the Defendants "lack[s] standing to seek

---

[35] *Matter of Maynard*, 2018 VI No. SCTCIV20150019, 2018 WL 2938633, at *3

[36] *Id.*

[37] Rules of Prof'l Conduct., V.I. R. 211. *Compra* Model Rules of Prof'l Conduct R 3.7 Lawyers as Witnesses: "(a) a lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."

[38] Model Rules of Prof'l Conduct R. 3.7 Comment 3

[39] *Daily News Publ. Co. v. 29th Legislature of the Virgin Islands*, 2012 V.I. 145

[40] *Thomas v. Kragel* 2018 V.I. Super. (*citing People of the V.I. v. Caesar,* 2016 V.I. Super. Ct. (quoting *Daily News Publ. Co.,* 2012 V.I.Super 145)).

disqualification of opposing counsel because they have not and cannot show an ethical breach...that 'so infects the litigation' as to impact Pedram and Link's interest in a just and lawful determination of their claims."[41] COTG further argues that "Defendants have not demonstrated how Attorney Sheesley's Facebook 'friendship,' nor his pre-representation communication with Pedram impacts their interest in a just and lawful determination of the parties' claims."[42] However, the Court finds that it is in the best interest of a fair administration of justice to address Pedram and Link's Amended Motion. Attorneys are required to come forward if he or she has actual or potential knowledge of an ethical breach.[43]

¶27    The Defendants do not have to prove that an ethical breach has in fact occurred, but rather that the potential knowledge of an ethical breach could impact a determination of the pending action. Because Pedram and Link argue that Sheesley has engaged in "professional misconduct that is prejudicial to the administration of justice" by filing a Complaint that contains information of prior communications between Pedram and Sheesley, the Court finds sufficient authority to review Defendants' Amended Motion to Disqualify.

### b.  The Court will Not Disqualify Sheesley as Counsel for COTG

¶28    Based upon the applicable Professional Rules of Conduct, the Court finds that Sheesley's conduct is neither prejudicial to the administration of justice nor does the possibility of his dual role as counsel and a witness disqualify him from representing COTG. The Court finds that a substantive violation has not occurred in this case and, therefore, it need not engage in the second step, balancing test inquiry as set forth in *Fenster*.

### i.  Sheesley's Conduct Did Not Violate the Model Rules of Professional Conduct

¶29    Under the Virgin Island Rules of Professional Conduct, "it is professional misconduct for a lawyer to...engage in conduct that is prejudicial to the administration of justice."[44] The Court is expected to disqualify licensed attorneys from representation if the conduct results in a violation. In this case, the Defendants claim that Sheesley's conduct is prejudicial to the administration of justice for the following three reasons: "Attorney Sheesley communicated with Pedram about contested issues in this case [warrant disqualification]; that Attorney Sheesley advised Pedram to pay rent on behalf of LLC from his person funds; [and that he] advised Pedram to stop posting about Landlord on social media."[45] Hoolink further argues that "Attorney Sheesley's direct exchange with Pedram about that Facebook post immediately after it was posted is unquestionably related to [allegations in the Complaint]" and is, therefore, "extremely prejudicial."[46]

---

[41] Plaintiff's Response to Pedram and Link's Amended Motion to Disqualify at 5-6.

[42] *Id.* at 6

[43] *Santander Sec. LLC v. Gamache*, 2017 WL 1208066, at *3 (E.D. Pa. 2017) (citing *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984).

[44] V.I. R. 211.8.4. Misconduct

[45] Defendants' Amended Motion to Disqualify at 9.

[46] *Id.* at 7.

¶30     Historically, courts in the Virgin Islands have considered conduct prejudicial to the administration of justice as being in contempt of court, violating local statutes, delaying the progress of court proceedings, and among others, falsely representing information to a tribunal.[47] Governing misconduct, ABA Model Rule 8.4, Comment 2 explains "Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category."[48] "The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings and the purpose of granting such motions is to eliminate the threat that the litigation will be tainted."[49] While they may have been unsolicited and unwise, the Court finds that Sheesley's communications to Pedram do not threaten the integrity of these proceedings, taint the substance of litigation, or rise to the level of conduct that is considered a serious interference with the administration of justice.

¶31     The Court is not persuaded by the Defendants' argument that Sheesley's comments should be construed as legal counsel or advice to Pedram. The conversations at issue occurred before an attorney-client relationship was established between COTG and Sheesley; both parties concede that Sheesley did not represent COTG when the messages were exchanged between Pedram and Sheesley. Furthermore, Pedram and Sheesley had previously communicated with one another regarding less formal matters. At a status hearing on August 4, 2020, Sheesley informed the Court, "I've known Mr. Pedram for almost 10 years. I don't know how long we've been Facebook friends, but I went back and reviewed the text messages history between myself and Mr. Pedram. And the first text message that Mr. Pedram and I ever exchanged was in 2012 when Mr. Pedram was inquiring about taking a firearm class...."[50] Over the course of several years, Pedram and Sheesley occasionally communicated with one another on various subjects. Given the parties' prior relationship, the text message exchanges and Facebook connection between Pedram and Sheesley, the Court finds that Sheesley's conduct does not warrant disqualification.

¶32     Although some allegations in the First Amended Complaint include content related to Pedram's Facebook post, the Court does not find this sufficient reason to disqualify Sheesley for

---

[47] *See In re Suspension of Williams*, 2013 V.I. S. Ct. Civ. No. 2013-0054, slip op. at 1-2 (unpublished) (granting petition for discipline by consent and imposing suspension when respondent admitted to "maintaining a [*641] private immigration practice while employed as an Assistant Attorney General"). *See, e.g., State ex rel. Oklahoma Bar Ass'n v. Burns*, 2006 OK 75, 145 P.3d 1088, 1093 (2006) (holding attorney's violation of statute prohibiting drunk driving constitutes conduct prejudicial to the administration of justice); *In re Suspension of Joseph*, 2012 V.I. 503 (concluding that Attorney Joseph violated Model Rule 8.4 based on its finding that the Riveras "visited Attorney Joseph's office on many occasions, seeking to see Attorney Joseph and to learn about the status of their civil case," but "were told on each occasion that the case was progressing in court;" *See, e.g., In re Disbarment of Taylor*, 2014 V.I. 379 (establishing that Taylor falsely represented to the immigration tribunal that he did not know Saramah's whereabouts, despite Saramah having told Taylor that he had moved to Jerusalem).

[48] Model Rules of Prof'l Conduct R 8.4, Comment 2.

[49] *McKenzie Const. v. St. Croix Storage Corp.*, 37 V.I. 105, 108, 961 F.Supp. 857, 859 (D.V.I. Apr. 23, 1997) (citing *United States Football League v. National Football League*, 605 F.Supp. 1448, 1464 (S.D.N.Y.1985)).

[50] August 4, 2020 Hearing Transcript p 3 at ¶¶ 5-12.

"being extremely prejudicial."[51] The First Amended Complaint includes a screenshot of Pedram's Facebook post to evidence COTG's argument in support of breach of contract. It also includes information well beyond the scope of text messages and private Facebook messages exchanged. The Court agrees with COTG's claim that "Pedram posted publicly to his friends and followers on Facebook […], which invites comment from any of Pedram's thousands of 'friends.'"[52]

> Each Facebook user has a "profile," typically containing an identifying photograph and information about the user's academic and professional background. Users often include more personal information, such as their relationship status, hometown, interests (favorite books, movies, leisure pursuits, etc.), and contact information. A Facebook profile also includes a "wall," on which users can post publicly visible comments to each other, and a page for photographs to be uploaded and viewed. Private correspondence, called "messages" may also be exchanged between users. One user can ask another to be his "friend;" depending upon each user's privacy settings, a friendship will enable the two users to see the entirety of one another's profiles.[53]

¶33   Given the public nature of Pedram's initial post on his Facebook wall and that Sheesley and Pedram were already Facebook friends at the time of the post, the Court finds that Sheesley did not violate an ethical rule of misconduct when he commented and privately messaged Pedram about his post, or when he referenced the content of the post in the First Amended Complaint.

### ii. Sheesley's dual role as counsel and a witness does not disqualify him to represent COTG.

¶34   Virgin Islands Rules of Professional Conduct, as embodied in Supreme Court Rule 211.3.7, require disqualification of an attorney when it is likely that the lawyer will be a necessary witness.[54] To be considered a necessary witness, the lawyer's likely testimony must be relevant, material and unobtainable elsewhere.[55] If it is likely that the testimony can be obtained through other means, then the attorney is not a necessary witness.[56] Further, if the testimony of the lawyer as a necessary witness relates to an uncontested issue, he or she may simultaneously act as an advocate.[57]

---

[51] Defendants' Amended Motion to Disqualify at 7.

[52] Pl.'s Resp. to Pedram and Link's Amended Mot. to Disqualify at 2.

[53] Securities Practice and Electronic Technology § 5.11.

[54] V.I. R. 211.3.7

[55] See *Grammar v. Melnik* 2008 D.V.I. LEXIS 58854 *1; *See also* Annot. Model R. Prof'l Conduct, Subsection (a) "lawyer may not act as an advocate at trial if likely to be deemed necessary witness")(*quoting Brown v. Daniel*, 180 F.R.D. 298 (D.S.C. 1998)).

[56] *Id.*

[57] V.I. R. 211.3.7(a)(1).

¶35     ABA Model Rule 3.7, Comment 2 explains, "The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation."[58] Comment 4 of Model Rule 3.7 urges the Court to perform a balancing test of several factors when deciding a motion to disqualify: "In this jurisdiction, courts review the interests of the client, of the tribunal and opposing party."[59] The Court will consider "whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice" against "the effects of disqualification on the client."[60]

> Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client.[61]

¶36     Additionally, "in determining if it is permissible to act as an advocate in a trial which the lawyer will be a necessary witness, the lawyer must also consider that the dual role may give rise to a conflict of interest...."[62] Comment 6 of ABA Model Rule 3.7 explains that "determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved."[63]

¶37     Here, the Defendants argue that "[b]ecause Attorney Sheesley's communications with Pedram directly contradict the entire basis for [the] Landlord's Complaint, he is an essential witness who must be disqualified."[64] Specifically, the Defendants claim that "Landlord's entire theory of liability on all counts is centered upon an alleged conspiracy between the Members to 'engage in subterfuge' to breach the lease and steal the LLC's property...."[65] Hoolink further maintains that Sheesley should be disqualified because his possible testimony would relate to a contested issue, claiming that "the parties dispute whether: (1) Members engaged in a conspiracy to violate the lease; (2) Members shared legitimate concerns related to COVID-19, which affected their business; (3) Members disparaged the Landlord; and (4) Pedram should have paid the rent from his personal funds."[66]

¶38     In sum, the Court finds that although the Sheesley's text messages and Facebook posts may be relevant, the Defendants did not sufficiently demonstrate that the testimony is material or unobtainable elsewhere. Further, the Court is not persuaded by the Defendants' argument that

---

[58] Model Rules of Prof'l Conduct R. 3.7 Comment 2.

[59] *Daily New Publ'g Co. Virgin Islands Daily News J. Lowe Davis v. 29ᵗʰ Legislature of the Virgin Islands*, 59 V.I. 138, 145 (Super. Ct. 2012) (internal citations omitted).

[60] Model R. Prof.'l Conduct R. 3.7 Comment 4.

[61] Model R. Prof.'l Conduct R. 3.7 Comment 2(a)(3).

[62] *Id.* at 7 Comment 6

[63] *Id.*

[64] Defs.' Amended Mot. to Disqualify at 7.

[65] *Id.*

[66] Defs.' Reply in Support of their Amended Mot. to Disqualify at 3.

Sheesley's possible testimony does not relate to an uncontested issue. The Court is not likely to be misled by Sheesley's possible testimony related to the Facebook post, comments, and text message correspondences given the nature of this case. Finally, considering the interests of the tribunal and parties, the Court finds that disqualifying Sheesley would adversely impact the administration of fair and equitable justice.

¶39      The Court agrees with Plaintiff's argument that "Sheesley's words could be admitted (if admissible) without him testifying" because Pedram could introduce and authenticate the communications himself.[67] Because his possible testimony is obtainable elsewhere, the Court declines to disqualify Sheesley from representing COTG on the basis of being a necessary witness.

¶40      Even if Sheesley were a necessary witness in this case, the subject matters of the messages are not materially contested. Thus, the Court does not have a sufficient basis to disqualify Sheesley as counsel. The parties are not contesting whether Pedram posted on Facebook on March 18, 2020, nor that Attorney Sheesley responded accordingly.

¶41      The Court must also consider "various issues that might impact a client if forced to retain new legal counsel."[68] Given this Court is not likely to be misled by possible testimony or evidence of Pedram and Attorney Sheesley's communications, disqualifying Sheesley would risk undue hardship against the speedy, equitable, and fair determination of this matter. COTG would likely suffer prejudice if its counsel of record were to be disqualified. The nature of this case surmounts to more substantive issues than the content of the exchanged messages at issue. Further, the Court does not believe the probable tenor of Sheesley's testimony outweighs the substantial hardship that COTG would experience as a result of his disqualification.

## V.    CONCLUSION

¶42      The Court finds that Hoolink does not lack standing to seek disqualification of Sheesley given "that an attorney-client relationship is unnecessary to permit an opposing party to file a motion to disqualify counsel" and "based on the applicable ethical rule that requires attorneys to come forward if he or she has ... potential knowledge of an ethical breach."[69] However, the Court finds that Sheesley's conduct at issue does not violate the Virgin Islands Rules of Professional Conduct. Further, the Court finds that his communications with Pedram are not prejudicial to the administration of justice. Lastly, the Court finds that there is no basis in law or fact to disqualify Sheesley on the basis that he is a necessary witness. His testimony about the Facebook post and

---

[67] Pl.'s Response to Pedram and Link's Amended Mot. to Disqualify at 8.

[68] *Daily New Publ'g Co. Virgin Islands Daily News J. Lowe Davis v. 29th Legislature of the Virgin Islands*, 59 V.I. 138, 146 (Super. Ct. 2012) (internal citations omitted).

[69] Keith Swisher, Article, *The Practice and Theory of Lawyer Disqualification*, 27 Geo. J. Legal Ethics 71, 88 n. 62 (citing 25 Am. J. Trial Advoc. 17, 18, 21–22 (2001)) (other citations omitted); *Id.* (collecting cases); and *See Santander Sec. LLC* (E.D. Pa. Apr. 3, 2017) (citing *Kevlik,* 724 F.2d 844, 847 (1st Cir. 1984)).

text message communications at issue are obtainable elsewhere. Even if his testimony were not obtainable elsewhere, the subject matter of the communications is not a materially contested issue that would warrant disqualification of Sheesley's dual role as counsel and a witness. Therefore, Defendants' Amended Motion to Disqualify will be denied.

Accordingly, it is hereby

**ORDERED** that Defendants' Amended Motion to Disqualify, which was filed on July 2, 2020; is **DENIED**; and further

**ORDERED** that Defendants' Motion to Disqualify, which was filed on June 29, 2020, is **DENIED as moot**; and further

**ORDERED** that copies of this Memorandum Opinion and Order shall be directed to Attorney Michael L. Sheesley; and Attorneys Eric A. Hiller and Justin King of Clyde & Co US LLP.

**DATED:** 3|15|2021

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____

**LORI BOYNES**
Chief Deputy Clerk: 3 / 15 /2021